George LIM, Plaintiff,

v.

Ramsey CLARK, Attorney General of the United States, George K. Rosenberg, District Director of the Immigration and Naturalization Service; Immigration and Naturalization Service of the United States, Department of Justice, Defendants.

No. 66–1780.

United States District Court, C. D. California.

April 15, 1968.

Wm. Matthew Byrne, Jr., U. S. Atty., Frederick M. Brosio, Jr., and James R. Dooley, Asst. U. S. Attys., Los Angeles, Cal., for defendants.

Simon, Sheridan, Murphy, Thornton & Medvene, by Richard A. Murphy, Los Angeles, Cal., for plaintiff.

## MEMORANDUM OPINION

CRARY, District Judge.

The plaintiff, George Lim, by his Amended Complaint, seeks a Certificate of Citizenship, 8 U.S.C. §§ 1103, 1452, as the son of a United States citizen, Lim Jew, whose father, Lim Sam, was born in California. The defendants, by their answer, (1) deny that the plaintiff's true name is George Lim, (2) deny that his father's name was Lim Jew, and (3) deny that his grandfather's name was Lim Sam.

It is the Government's position that plaintiff is not a member of the Lim family and that his true family name is Jew [also spelled Joe, Jeu, Chou, and Chow] Len [Lin] Hang [Haung], that plaintiff's father's true name was not Lim Jew but Jew Hoy Yin, and that the true name of plaintiff's claimed grandfather was not Lim Sam but was Eng Sam, and the Government further contends that Lim Sam was not plaintiff's grandfather but that his true grandfather was Jew Sui Ngor.

Plaintiff first came to the United States in April, 1932. His father had first arrived in the United States in January, 1908, and had also, on two other occasions, returned to the United States from trips to China, in September, 1916, and June, 1930. The father had arranged for the necessary witnesses to testify before the Board of Inquiry of the Immigration and Naturalization Service, at the time of plaintiff's arrival in the United States, with respect to plaintiff's name, citizenship, and so forth.

The witnesses testifying, in addition to the plaintiff, were his father and one Sue Wot, who has testified by deposition in the instant proceeding.

The plaintiff testified, at the hearing held April 22–26, 1932 [Defts.' Ex. S–3], among other things, that his only name was Lim Len Hang and that he was the son of Lim Jew [Lim Hoy Yin (Yen)]. He also testified that the persons in the United States, in addition to his father and Sue Wot, who knew that he was the blood son of Lim Jew were Sue Hem, brother of Sue Wot, and his two paternal uncles, Lim Hung Fook and Lim Jin Hen. The two uncles, he said he had never seen and did not know anything about them. Plaintiff further testified he was born February 12, 1917, in Ung Sin Village, Mow Gong Section, Hoi Ping District, China, and lived there all his life.

Plaintiff's father testified [Defts.' Ex. S–3], among other things, that his only names were "Lim Jew; Lim Hoy Yen"; that he was a cook and at the time lived in Merced, California; that he was born in Sai Woo Village, Sun Ning District, China; that he was 40 years of age and first came to the United States in 1908; that he was married in 1915 in "Ung Sen Village, Hoi Ping District, China"; and that he had five sons whose names were (1) Lim Fong Ngar, (2) Lim Len Hang [Applicant], born February 12, 1917, (3) Lim Len Kong, (4) Lim Len Chaw, and (5) Lim Len Woot. He stated that all of the sons but the applicant were still in Ung Sen Village, China. The father further testified he had two brothers named Lim Hung Fook, age 38, and Lim Jin Hen, age 37, and that both were last seen in San Francisco in 1917; that there were 34 or 35 houses in Ung Sen Village; that there was an Ung Sen New Village about one hundred steps north of the Old Village, and that Sue people lived in the New Village; that there were Sue and Jew family people in Chung Hong

Village, which was a little over one "li" from his Village; that one Lim Chung Suey built his house for him in Ung Sen Village in 1914; that there were eight rows of houses in the Village and [the report states, page 18, the witness volunteered] that the first three rows from the South were occupied by the Lim family and the remainder by the Jew family; and that the Ung Sen New Village had only three houses. Plaintiff's father went on to say that Sue Wot went to school with his son [plaintiff herein] and is well acquainted with his family and knows that the applicant is his son [Page 24], that Sue Wot had been in his home with his [Sue Wot's] mother three or four times, and that his son [plaintiff] and Sue Wot attended school together for five or six years [Page 24].

Sue Wot testified for plaintiff [Defts.' Ex. S–3, page 27, et seq.] at the hearing in April, 1932, in part, as follows: That he was 18 years old; born in Ung Sen New Village, Hoy Ping District, China; that he had come to the United States in July, 1930; that he first met the plaintiff in 1927 when his mother took him and his brother to visit plaintiff's home; he had visited Lim Jew's [plaintiff's father's] home five or six times and met plaintiff on each of these occasions; that he went to school with plaintiff for five years; that there were twenty-three or twenty-four students attending the school; Sue, Lim and Jew families attended the school, four pupils of the Sue family, five of the Lim family and three of the Jew family [pages 30–31]; and that one Jew Len Kuey attended the school and his father was a teacher in the school.

The plaintiff, Lim Len Hang, was recalled [Defts.' Ex. S–3 page 35] and testified, in part, that he had four brothers and no sisters; that he had never seen his grandfather, Lim Sam; that Ung Sen New Village was only three houses and that he started to school in 1925 and stopped in January, 1932; that his teacher was Jew Hoy Seung; that Sue Wot was 17 or 18

years old as of April, 1932; that six Lim family boys attended school when he did and there were also Jew and Sue boys in attendance; that Jew Lin Kuey sat directly in front of him in school; that Sue Wot visited his home over ten times; that plaintiff's father was home then; sometimes Sue Wot came to their home with his brothers and not his mother; and he last saw Sue Wot in China on May 21, 1930, when he came to bid plaintiff's family good-bye when he [Sue Wot] was going to the United States.

The Board of Inquiry voted to deny plaintiff admission but the ruling of the Board was reversed on appeal and plaintiff was admitted to the United States.

The record of proceedings had April 22–26, 1932 [Defts.' Ex. S–3], was offered by defendants in evidence to show the claims of plaintiff and the evidence before the Board on which action was taken and not for the truth of the facts stated therein.

The plaintiff testified in the case at bar in conformance with his testimony before the Board in 1932 as to the identity of his father, his father's brothers, his grandfather, his mother, and his brothers, together with his place of birth, age, acquaintance with Sue Wot, coming to the United States in 1932, and trips to China in 1947 and 1963 and return to the United States. He stated that his oldest brother, whose name was Lim Fong Ngah, was living in Los Angeles and his mother and brother, Lim Len Kong, were living in Hongkong and that his two younger brothers were still in Communist China. At the time of trial, plaintiff testified that the families living in Ung Sen Village were Jew, Lim, Sue and Wong. At the hearing in 1932, he had stated that the families living in the Village were Jew, Lim and Sue. The name Wong was not then included.

With respect to one Wong Foo, plaintiff testified that he had worked for plaintiff at the Kowloon restaurant in Los Angeles for over ten years, was a friend but not a relative.

In 1954 and 1958 Wong Foo made affidavits relative to the identity of plaintiff, plaintiff's father, and father's sons [plaintiff's brothers].

The affidavit signed August 11, 1954, [pltf.'s Ex. 23], states he had known Lim Jew over twenty-one years and they had worked together and kept close touch with each other until the death of Lim Jew on October 12, 1935, at which time they were both " * * * living in the same building at 919½ South San Julian Street, Los Angeles, California, * * *." He also stated that he knew Lim Jew's wife and five sons, whose names were Lim Fong Ngah, Lim Len Hang [plaintiff], Lim Len Kong, Lim Len Choo, Lim Len Wat, " * * * all born in Hoy Ping, Kwongtung, China." He also stated the birth date of each son. Wong Foo went on to say that Lim Jew was a naturalized citizen of the United States and all of his sons were entitled to passports, as set forth in the petition of Lim Len Hang [plaintiff] dated December 13, 1952; that he had many times visited and knew all of Lim Jew's family and that attached to the plaintiff's application for passports [12–13–52] were photographs of sons Lim Len Kong, Lim Len Choo, Lim Len Wat, and plaintiff's wife, Qwon She.

In affidavit executed November 10, 1958, [pltf.'s Ex. 24], in the presence of a Department of State Field Officer, Wong Foo said he was also known as Wong Hoy Bo and that he was born in Sai Sing Village, Hoy Ping, China. He further stated he was employed at the time by George Lim [plaintiff] in the Kowloon restaurant, 6124 Pico Boulevard, Los Angeles, California. He again outlined his acquaintance with Lim Jew and his family and said that the plaintiff had introduced him to a man plaintiff said was his older brother, named Lim Fong Ngah; that that was the only time he had seen this brother and did not know where he was; that he never saw any other children of Lim Jew nor did he ever see any photographs of them; and that he never saw any of Lim Jew's family in China except his wife on one occasion.

The defendants made every effort to find Wong Foo to subpoena him to testify as a witness at the trial in the instant case, but without success. In the circumstances, an affidavit of Wong Foo, executed on October 20, 1967, before Sam I. Feldman, Esq., trial attorney for the United States Immigration Service, interpreter Mr. Moy and Mr. Hibbard Lamkin of the Department of State was admitted in evidence under an exception to the hearsay rule [Defts.' Ex. A–Z].

In this affidavit, Wong Foo stated that his true and correct name was Chow [Jew] Dung Foo and that his married name was Jew Hoy Bo; that he was born in Ung Sing Village, Hoy Ping District, China, and was 14 or 15 years old when he came to the United States in 1909; that he used the name Wong Foo at that time and claimed Wong Haw as his father but that he was not directly related to Wong Haw and that Wong Haw's real name was Jew Do Jock and that he was born in China; that the name of his true blood father was Jew Look, whose married name was Jew Sui Ngor; that his true blood father was born in Ung Sing Village; that the true name of his paternal grandfather was Jew Gar Jai; and that the true names of his two true blood brothers were Jew Thlin [Sin], whose married name was Jew Hoy Seung, and Jew Yu, whose married name was Jew Hoy Yen [Yin]; that his brother Jew Hoy Yen used the name of Lim Jew when he came to the United States; that the plaintiff, presently known as George Lim, is the son of his brother, Jew Hoy Yen [Yin], and that the true name of George Lim is Jew Len Hang. He identified the plaintiff and his father, Jew Hoy Yen, also known as Lim Jew, in the photograph, defendants' Exhibit AA, and the plaintiff in defendants' Exhibit A–B.

Plaintiff offered in evidence some twenty-five exhibits in addition to the testimony of several witnesses. These

exhibits include sworn testimony and statement made as a part of the Immigration files of Lim Sam [pltf.'s Ex. 1.-1-1.5] in 1908-1909, Lim Jew, 1930, Lim Len Hang [plaintiff], 1932, and applications for passports of George Lim [plaintiff] in 1947 and 1963. These affidavits and testimony of Lim Sam, Lim Jew, Lim Len Hang [plaintiff], and George Lim, all support the contentions of plaintiff as to his family identity, members of his family, relationship, and so forth, as contended for in the proceedings before the Board on plaintiff's admission to the United States in 1932.

Plaintiff's Exhibits 14 and 15 are affidavits of Paul F. A. Conway, Esq., a lawyer, now deceased, addressed to the United States Department of Immigration and the Secretary of State, Passport Division, on March 26, 1955, and August 4, 1954, respectively. Both of these affidavits were made in connection with the application of Lim Len Hang [plaintiff] for issuance of passports to his three brothers, Lim Len Kong, Lim Len Choo and Lim Len Wat. Mr. Conway stated he had known Lim Jew since 1914 and had known him by no other name; that Lim Jew had gone to China in 1915 at which time he married Qwon She; that Lim Jew introduced him to Lim Len Hang, his son, in 1932 upon his arrival in Los Angeles; that he had had occasions to counsel and assist the son [plaintiff] during his first year in the United States; Mr. Conway identified photographs attached to the application and said he was certain that the three sons were sons of Lim Jew; that when Lim Fong Ngah, the eldest son, arrived in Los Angeles in late 1941 he was introduced to him by his brother Lim Len Hang [plaintiff]. He said that he had first met Wong Foo in 1914 at which time he was the assistant of Lim Jew; that he had been in constant touch with Lim Len Hang since the death of Lim Jew on October 12, 1935. Plaintiff's Exhibit 14 is also signed by Mr. Conway's wife. In this affidavit, dated March 26, 1955, the Conways confirmed Mr. Conway's observation in Exhibit 15

relative to plaintiff and Lim Jew. Exhibit 14 states that it is written with the intent that it be used as evidence in establishing the right of Lim Koon Yick as a citizen of the United States and as the daughter of Lim Len Hang.

Several distinguished citizens of this community, who have known and have been friends of the plaintiff for many years, testified to the excellent reputation of plaintiff in the community for truth, honesty and integrity. There is no question but that plaintiff has been an outstanding member of the Los Angeles community and has made substantial contributions to the development of this area and its institutions.

Mrs. Agnes Underwood visited the plaintiff's mother and brother, Len Kong, in Hongkong in 1963. On reaching the address of the apartment house in which they lived, by taxi, she located their apartment by the use of the family name of Lim.

It was agreed by the parties that the person who entered the United States first in 1908 and later in 1930 and who testified at plaintiff's hearing in April, 1932, under the name of Lim Jew was the father of plaintiff. The plaintiff asserts that his father's name was Lim Jew. The Government contends that the father's true name was Jew Hoy Yin and that plaintiff's true name is Jew Len Hang, not George Lim or Lim Len Hang, and that the name of plaintiff's claimed grandfather was Eng Sam, not Lim Sam, and that the said Eng Sam was not his true grandfather, who the Department of Immigration claims was Chow Sui Ngor, as stated by Jew Hoy Bo, also known as Wong Foo.

Father Dermady spent five years in Central China as a missionary, 1924 to 1929. He testified that although it was customary for the population of small villages to be made up from only one family or clan, that on occasion he had known of members of another family living in a village. He had not spent any time in Kwongtung Province, South China, where plaintiff had lived but had passed through that area on a trip.

Father Dermady's testimony would account for the possibility of a member of the Lim family living in Ung Sin Village but also for a member of the Jew family being born in Sai Woo Village where plaintiff's father testified, in 1932, he had been born. All of defendants' witnesses who had lived in Ung Sin [Tung Sing] Village testified that only members of the Jew [Jeu, Joe, Chow] family lived there and that they knew of no family living in the Village by the name of Lim, or of any other name than Jew. There was testimony that servants who may have been brought into a village would have a family name different from the family that occupied such village.

The testimony of several of the witnesses for the Government should be reviewed in brief. Sue Wot, who testified at plaintiff's hearing in April, 1932, testified at the trial by way of deposition, stating that he had testified for plaintiff in 1932 at the request of plaintiff's father. He said he came to the United States under the name of Sue Wot but that his true name was Jew Him Guey, not Sue Wot; that he attended school with plaintiff for two or three years and had visited plaintiff's home in Ung Sin Village; that plaintiff's true name was Jew Len Hang, not Lim Len Hang; that he had testified falsely as to plaintiff's true name at the hearing in April, 1932; and that he first met plaintiff in 1925. He knew plaintiff's father, whose name was Jew Hoy Yen [Yin], and stated that plaintiff had introduced him to his father in the Village and he last saw both the father and Len Hang in 1932 when he testified for plaintiff. Jew Him Guey, as well as several other witnesses who testified for plaintiff, by their confession to the use of false family names for the purpose of entering the United States, forfeited their United States citizenship, and this fact was explained to them when their testimony was taken.

Sue Him, who plaintiff claimed to be a brother of Sue Wot, testified in the case at bar by deposition. He stated that his true name is Jew Him Gay, not Sue Him; that he had testified for plaintiff's alleged brother at a hearing in Los Angeles in 1941 and at that time he testified that one Lim Len Ngah was plaintiff's brother but that that testimony was untrue and that the true name of the alleged brother of plaintiff was Jew Len Kuey [Kue, Koi]; that Len Kuey was not plaintiff's brother but had used the name of plaintiff's brother. Jew Him Gay further testified that he was born in Ung Sin Village; had gone to school with plaintiff four to five years; that he had met plaintiff's father in Fresno, California, with plaintiff in 1932 and that plaintiff's father's name was Jew Hoy Yen; and that he had seen plaintiff when he testified for plaintiff's alleged brother in Los Angeles in 1941. The witness identified pictures in evidence of Jew Len Kuey [Exs. A–G], plaintiff's father, Jew Hoy Yen, and plaintiff [Exs. AE, A, B, C]. Exhibit H, he stated, was a true schematic sketch of Ung Sin Village and the surrounding area.

Lim Fook testified, by deposition, that he was born in Yu Mai Village, Kwongtung, China. He was claimed by plaintiff and plaintiff's father to be a brother of plaintiff's father. He testified that his claimed father's true name was not Lim Sam, as he had claimed on entering the United States, but Eng Sam. He further stated that Eng Sam was not his father, but his uncle; that he had also claimed to have two brothers, Lim Jew [claimed by plaintiff to be his father] and Lim Hang, but that, in truth, he had no brothers; that he was brought to the United States in 1908 by Eng Sam, who claims to be Lim Sam; that he had only seen Eng Sam when he was aboard ship in 1908.

Jew Kwong Fei testified that he was born in Tung [Ung] Sin [Sing] Village on December 2, 1925; that he knew Jew Len Kong, plaintiff's brother; that his house was only one house away from Len Kong's; that he had visited Len Kong's home and gone to school with him; that Len Kong had a sister whose name was Fong Ngar; that there are

only members of the Jew family in Tung Sing Village; that he had confessed that his true name was Jew Kwong Fei in 1966; and that he had last seen plaintiff, Len Hang, before the trial in Merced, California, in 1948. The witness also identified the members of plaintiff's family in Exhibits AF, AD, B and C. He also said that it was not usual to use the surname when addressing friends at play; that he had never heard of Lim Jew and had never been actually told that plaintiff's surname was Jew.

Chow [Jew] Moy Lai testified, by deposition, that her married name was Wong and she was a sister of Jew Kwong Fei [a witness in this case]. She said she was born in Tung Sing Village December 3, 1927, and lived in the village until 1948 except for one year during the war. The witness identified photographs in evidence of the plaintiff, his brother Jew Len Kong, his mother, and Jew Len Kuey. She stated that the father of Jew Len Kuey was Jew Hoy Sheung [Seung], who was a teacher in her school. She said she knew Jew Len Hang [plaintiff], whose home was just back of her's, and that she had been in his home more than once; she called plaintiff "cousin" to indicate a close relation because they were neighbors; and that her brother, Jew Kwong Fei, had come to the United States under a false name.

Jew Bok Ten testified that he was born in Tung Sing Village in 1926 and was in school there for seven years, age 8 to 15. He knew Jew Len Kuey in the Village and Len Kuey's father, whose name was Jew Hoy Sheung, who had drawn a lease for him in 1948.

Jew Kwok Chong testified he was born in 1929 in Tung Sing Village and that all in that Village had the name of Jew; that no one by the name of Lim lived in the Village; that he had gone to school with Jew Len Kong [plaintiff's brother]; and that Len Kong's father was Jew Hoy Yen; that he knew Jew Len Kuey, whose father's true name was Jew Hoy Sheung; that plaintiff's father had three brothers whose names were Jew Hoy Bo, living in the United States; Jew Hoy Doo [deceased], and Jew Hoy Seung.

Other witnesses who had lived in Tung Sing Village testified on behalf of defendants but it is believed that outline of the testimony of defendants' most important witnesses has been set forth above.

Documentary evidence offered by the defendants and admitted in evidence includes the burial record of the Chinese cemetery in Los Angeles, an adjunct of the Chinese Benevolent Association, Exhibit AK, which has an entry numbered 578 on page 89, as follows: "Joe Hoy Yen, Age 40, 10/12/35 F.D. Weber."

The parties agree that plaintiff's father died October 12, 1935, and was buried in this cemetery. Death Certificate of the father was introduced in evidence by both parties [Exhibit 8 and Exhibit AJ]. It will be noted from the Death Certificate that the deceased's name is *"Jew Lin"*, who died October 12, 1935, residence, 917½ San Julian St., Los Angeles, Cal., and that the embalmer and funeral director was Frank D. Weber.

A record of the inscription on all tombstones in the Chinese cemetery, Los Angeles, made for the Chinese Benevolent Association in 1955 [Ex. AL] evidences a tombstone inscribed in Chinese characters [page 31] translated as follows:

HOI PING

MOW KONG

SHEUNG TUNG

TUNG SING LAY

CHOW HOY YEN MUN

CR–24

"CR–24" was translated to mean 1935.

The evidence shows that a decedent's true name was, according to custom and practice, obtained from the decedent's family and entered in the burial record and that the true name, together with the place of birth and date of death, was inscribed on the tombstone.

Defendants' Exhibits A–1 to P–1 are English translations of Exhibits A–P, which are in Chinese characters. These Exhibits are termed by defendants to be "Coaching Papers." Plaintiff's translation [Exhibit 10] in some respects, but not substantially, differs from defendants' translation of these papers. Plaintiff's translator says the translation "Coaching Papers" should be "The following is the recollection of questions and answers" or "The following are additional questions and answers." These papers were offered by the defendants to show the statements which were made by plaintiff but not for the truth thereof.

Plaintiff testified that the papers, which were almost entirely in plaintiff's handwriting, were sent to the members of his family, wife, mother and brothers, for their use in refreshing their memory for examination by the American Consul in Hongkong and on their arrival in the United States as to details of their names, birth dates, residence, relationship of and members of immediate family as well as prior generations. The papers set forth in great detail, in question and answer form, data that each of plaintiff's family was to know in answering questions of the Consul in Hongkong and in testifying on arrival in the United States before agencies of the United States Immigration Service. It was further stated by plaintiff that the purpose of preparing this information in such detail was to aid members of his family in answering the questions that he knew from his experience would be asked them and to avoid any of them being detained as he was at Angel Island for approximately two months; that his wife, with the assistance of such questions and answers, had had no difficulty when she entered the United States; that his efforts, as reflected in these papers, were not to assist his family in testifying to erroneous facts.

The defendants point out in Exhibit G–1, first paragraph, the statement "Wong Foo [Uncle Hoi Bo] because he is here, am using as the assistant witness." Wong Foo was also referred to as "second younger uncle" who was going to assist. Defendant's translation states that the word "uncle" is a courtesy title given to an older man and not necessarily an indication of blood relationship, and that by second younger uncle he meant the second male child born to Wong Foo's family and the fact that he, Wong Foo, was younger than plaintiff's father; that if referring to a true uncle he would have said "younger uncle."

Defendants also refer to the provisions in the first paragraph of Exhibit B–1, which states, in translating Exhibit B, "But you should definitely not carry this with you so as to avoid trouble—very important." Exhibit C contained a similar warning. Plaintiff's explanation of these remarks is that if the American Consul or Immigration Service found these Exhibits they would think the members of his family were relying on plaintiff's answers and instructions rather than their own recollection.

Several of defendants' witnesses testified to the necessity for Chinese immigrants to the United States to use names of families other than their own in order to gain entrance to the United States during the period plaintiff came into this Country, and that it was common practice, as evidenced by the confession and testimony of several of defendants' witnesses, to use what was termed a "paper family" name as distinguished from one's true blood family name.

Counsel for defendants, in closing argument, referred to the impossibility of admission to the United States of a Chinese national following the Chinese Exclusion Act of 1882, which was not repealed until 1943, and observed that the quota thereafter was *very* small until passage of the 1966 Immigration Act. The strong desire to come to this country and the problems involved make the means adopted understandable but does not make the paper family name used the true blood family name of the appli-

cant who may have been involved, and who needed American citizen parentage.

The record is replete with evidence that the plaintiff has never used any name but Lim Len Hang or George Lim since coming to the United States, and his family in Hongkong were fully advised of the need for their use of the family name Lim, which they no doubt used in contemplation of some time entering the United States as citizens.

The Court can but wonder why the plaintiff's mother and brother who are still living in Hongkong did not testify by deposition and why plaintiff's brother who is in Los Angeles was not called or his inability to testify established.

In weighing the credibility of defendants' witnesses, the Court has in mind that Jew Hoy Bo [Wong Foo] was a United States Army veteran and could remain in this Country for naturalization as a matter of right and that other defendants' witnesses who used paper family names were advised that their application for citizenship would be given due consideration as well as those of their relatives in China. As noted above, the witnesses who confessed to the use of family names other than their own for the purpose of entering the United States as citizens did so with the knowledge that they were forfeiting their citizenship, which had been established on the basis of the paper family name.

It should be noted, in considering the varied spelling of names throughout the record and this Memorandum Opinion, that the parties agreed that the same Chinese character used for a name, in translation, may be spelled differently, such as Jew, Jue, Joe, Chou and Chow, all being the same family name, which in this Memorandum Opinion has been referred to chiefly as Jew.

It is unfortunate that the conduct of plaintiff's father so many years ago, when bringing his son [plaintiff] into the United States as a member of the Lim family and as the grandson of Lim Sam, should now cause plaintiff the problems here presented. Plaintiff and his family have been unusually fine members of the community, but the Court, in good conscience, can conclude only that the record in this case establishes by clear, unequivocal and convincing evidence, that the true name of Lim Sam was Eng Sam, that Eng Sam was not the grandfather of plaintiff; that plaintiff's true grandfather was Jew Look, married name Jew Sui Ngor; that plaintiff's father was the brother of Jew Hoy Bo [Wong Foo], and his true name was Jew Hoy Yen [Yin], not Lim Jew; that Hoy Yen's father was not Eng Sam [Lim Sam] but Jew Sui Ngor, and the plaintiff's true family name is Jew, not Lim; that plaintiff's father was erroneously represented as the progeny of Lim Sam and plaintiff and his father have been erroneously represented to be members of the Lim family. Lew Moon Cheung v. Rogers, 272 F.2d 354, 362–363 (9 C.A.1959); and Lee Hong Lung v. Dulles, 261 F.2d 719, 724 (9 C.A. 1958).

It would appear to the Court that plaintiff may well rectify this error and become a citizen of the United States in due time, as so many others have who, in the first instance, came into this Country under paper family names.

The Court concludes that the defendants are entitled to Judgment on plaintiff's Amended Complaint. Counsel for the defendants is requested to prepare, serve and lodge Findings of Fact, Conclusions of Law and Judgment in accordance with the provisions of Local Rule 7. This Memorandum Opinion is not to be deemed a final Judgment.