Salvatore CUFARI, Defendant, Appellant,

v.

UNITED STATES of America, Plaintiff, Appellee.

No. 4870.

United States Court of Appeals First Circuit.

Dec. 6, 1954.

Joseph J. Gottlieb, Boston, Mass., with whom Julius E. Rosengard, Boston, Mass., was on the brief, for appellant.

Charles F. Choate, Asst. U. S. Atty., Boston, Mass., with whom Anthony Julian, U. S. Atty., Boston, Mass., was on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment setting aside and vacating an order admitting an alien to United States citizenship and cancelling his certificate of naturali-

zation. 120 F.Supp. 941. It presents the same problem considered by this court in Brenci v. United States, 1 Cir., 1949, 175 F.2d 90, for the basic question again is whether the Government's evidence is persuasive enough to establish that the appellant in order to obtain naturalization concealed the fact that he had been arrested from the naturalization officers and the court which naturalized him.

The appellant, Salvatore Cufari, was born in Italy in 1901 and entered the United States through the port of New York in 1914. He went immediately to Springfield in Hampden County, Massachusetts, where he has lived continuously ever since and where he completed an eighth grade education.

Between January 23, 1923 and March 1, 1927, Cufari was arrested nine times, and on three other occasions during that period he was formally charged with criminal offenses although apparently not actually placed under arrest. The crimes with which he was charged ranged from petty misdemeanors such as disturbing the peace, to more serious offenses such as buying, receiving, and concealing stolen property, of which he was found not guilty, and defacing the serial number of a motor vehicle and transporting intoxicating liquor without a license, of both of which he was found guilty and fined $150 and $300 respectively.

Within three months after the last offense with which he was charged, that is to say on May 27, 1927, Cufari filed a petition for naturalization in the Superior Court of the Commonwealth of Massachusetts for Hampden County. Then, in conformity with established procedure under the statute applicable at the time, Act of June 29, 1906, 34 Stat. 596, as amended, Cufari as the next step in the naturalization process presented himself and his two witnesses for preliminary examination by a Naturalization Examiner assigned for that purpose. At that examination entries were made by Examiner John F. Davis, deceased, on a Department of Labor Form 2328 called a "docket slip," which had already been partly filled out. On the face of this

document in the left hand column under appropriate headings appears in the handwriting of another Examiner the petitioner's name, residence, business, and nationality, and under that the names, businesses, and residences of his two witnesses. Under the name of each witness is interlined, apparently in Davis' handwriting, the notation "no arrests." In the right hand column of the docket slip under the heading "Result of Examination," notations in Examiner Davis' handwriting, except for Cufari's signature, appear in the following pattern:

```
"Reads           Arr. N. Y. 4-16-14-
 O.K.                Mass. Do.-
S. [check mark]   Spfld since 1914
                  Nicholas Curto, grocer,
                    1156 Columbus Ave
                     past 7 mos
                  Father, Filippo lives here,
                    not citizen
                        never absent
                        no arrests
                        School to 8th grade.
Salvatori Cufari
7/25/1927 JFD"
```

In September 1927 Cufari appeared with his witnesses at a naturalization session of the Superior Court for Hampden County at which the Government was represented by Naturalization Examiner Patrick J. Mahoney, now deceased. As a result of a hearing regularly conducted in open court an order was entered admitting Cufari to United States Citizenship and he was issued a Certificate of Naturalization.

Twenty-six years later, in August 1953, the United States Attorney for the District of Massachusetts by his assistant filed a complaint in the court below under § 340(a) of the Immigration and Nationality Act, 66 Stat. 260, 8 U.S.C. § 1451(a), asking for the revocation of the Superior Court order admitting Cufari to citizenship and the cancellation of his Certificate of Naturalization on the ground that the order and certificate had been procured by concealment of material facts and wilful misrepresentation. Cufari answered with a general denial and a plea of *res judicata* [1] and the case came on for trial in the court below.

At the outset of the trial Cufari admitted his criminal record as outlined above. Whereupon the attorney for the United States undertook to prove that Cufari had deliberately concealed that record from the Naturalization Examiners and the court which had admitted him to citizenship.

Since both of the Naturalization Examiners concerned with Cufari's case, and also the Superior Court Justice who admitted him to citizenship, had died, the Government of necessity was not able to produce direct oral testimony that Cufari had ever been asked if he had been arrested and had answered in the negative. In this situation the Government first offered to prove that it was the custom and practice, although not required at the time (1927) by either statute or regulation, see United States v. Kessler, 3 Cir., 1954, 213 F.2d 53, 55, footnote 2, for Examiner Davis in making preliminary examinations and for Examiner Mahoney in representing the United States in court, to ask applicants if they had ever been arrested, and for neither of them to recommend admission to citizenship if the applicant's answer was in the affirmative, at least when a serious offense was involved. The District Court rejected this offer of proof on two grounds. It said it was of the opinion that the evidence offered was legally insufficient to establish the Government's case by clear, unequivocal, and convincing evidence which does not leave the issue in doubt, and furthermore, that it would not find such evidence persuasive even though it

---

1. On the view we take of this case we find it unnecessary to consider the question presented by this plea. See, however, the dissenting opinion of Chief Justice Stone in Schneiderman v. United States, 1943, 320 U.S. 118, 173, 63 S.Ct. 1333, 87 L.Ed. 1796, and the cases there cited, and see also Knauer v. United States, 1946, 328 U.S. 654, 670 et seq., 66 S.Ct. 1304, 90 L.Ed. 1500.

were legally admissible.[2] Thereupon the Government without objection introduced Cufari's docket slip in evidence as an exhibit. And, as foundation for its introduction and in explanation of the notations appearing on it, the court permitted the Government over Cufari's objection to introduce testimony by the District Director of Immigration and Naturalization to the effect that he knew Examiners Davis and Mahoney, and that in conducting preliminary examinations in 1927 it was the practice of Examiners in general and of Examiner Davis in particular to ask applicants for citizenship if they had ever been arrested and to note the applicant's answer on his docket slip. The District Director was also allowed to testify that although he had never observed Examiner Mahoney in court, it was the general practice at the time for Examiners at final hearings to ask each applicant, among other matters, if he had ever been arrested, and if his answer varied from the notation appearing on his docket slip, to ask the court for a continuance for further investigation.

Cufari, testifying on his own behalf, said that he had no recollection of being asked about arrests either at his preliminary examination or at the hearing on his petition in court.

On the foregoing evidence the lower court concluded that the Government had proved its case by clear, unequivocal, and convincing evidence which did not leave the issue in doubt. The court found that Cufari on July 25, 1927, in order to procure naturalization, had told a duly qualified officer of the Naturalization Service that he had not been arrested during the preceding five year period, and then the court went on to say:

" * * * This is manifested by a so-called Docket Slip which he signed on July 25th, 1927 Form 2328 of the Naturalization Service. At the time of his signature there was on that form, as he well knew, a statement that he had been subject to 'no arrest'. He intended to adopt that statement as his own for the purpose of deceiving first the representative of the Naturalization Service, and subsequently the Superior Court. Relying upon this statement in the Docket Slip, the representative of the Service presented, for approval of his naturalization, CUFARI to the Court. The judge relied upon the Docket Slip, the representative's statement and the subsequent silence of CUFARI. As a consequence of this reliance, the Superior Court on September 21, 1927 ordered CUFARI admitted to citizenship, and subsequently issued to him certificate 2641335. In fact, as defendant well knew, his statement that he had not been arrested was false * * *."

On the basis of these findings the court concluded that as a matter of law Cufari had procured the order admitting him to citizenship and his Certificate of Naturalization by concealment of material facts and by wilful misrepresentation. Wherefore it entered the order from which Cufari has taken this appeal.

■ There can be no doubt that the District Court measured the persuasive force of the Government's evidence by the exacting standard established in Schneiderman v. United States, 1943, 320 U.S. 118, 125, 63 S.Ct. 1333, 87 L.Ed. 1796, and applied in Baumgartner v. United States, 1944, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525 and Knauer v. United States, 1946, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500. Nor do we think there can be any doubt that the exacting standard applies in cases such as

2. Although we do not question the probative value in some situations of evidence of a person's habitual or customary conduct as showing the conduct of that person on a particular occasion (see 1 Wigmore on Evidence (3rd Ed. 1940) §§ 92, 93) we agree with the District Court's ruling excluding such evidence in the situation presented in this case. We therefore reject the Government's suggestion that in the event of our disagreement with the District Court's conclusion we should remand the case for a new trial in order that evidence of the custom and practice of the Examiners involved might be considered.

this even though it was established and has only been applied by the Supreme Court in cases involving the sincerity of an applicant's oath of allegiance—a subjective matter of belief where necessarily "proof is treacherous and objective judgment, even by the most disciplined minds, precarious." Baumgartner v. United States, supra, 322 U.S. 675, 64 S.Ct. 1246. In the Brenci case cited at the outset of this opinion we applied the strict standard of proof in a situation like the present where "attachment" to Constitutional principles was not involved, and we apply it here, for the reason that the Supreme Court in the Schneiderman case, supra [320 U.S. 118, 63 S.Ct. 1336], adopted a rule of strict proof long applicable in land grant cases on the ground that a certificate of naturalization as a grant of political privileges was " 'closely analogous to a public grant of land' ", and "rights once conferred should not be lightly revoked."

Thus we come face to face with the question of our appellate function in the premises.

The Supreme Court in the Baumgartner case, supra, clearly indicated that in denaturalization cases we have somewhat broader powers than are accorded to us in other civil cases to review findings falling into the category of findings of fact. The Court did not suggest, however, that we should wholly disregard findings of fact made below and ourselves try these cases *de novo* and make findings of fact ourselves. On the contrary, the Court characterized the rule that concurrent findings of two lower courts "are persuasive proof in support of their judgments" as "a rule of wisdom in judicial administration" to which it said it intended to pay more than lip service. Nor did the Court in Baumgartner's case lay down a rule of appellate conduct in denaturalization cases comparable to the "clearly erroneous" rule embodied in Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. That is to say it is not suggested that we might reverse only when we were of the opinion that the district court was "clearly erroneous" in its

conclusion that the Government's evidence was so clear, unequivocal, and convincing that the issue was not left in doubt. The Court left the matter of our appellate function pretty much at large when on page 671 of 322 U.S., on page 1244 of 64 S.Ct. it summarized its discussion with the statement: "Suffice it to say that emphasis on the importance of 'clear, unequivocal, and convincing' proof, see Schneiderman v. United States, supra, 320 U.S. at page 125, 63 S.Ct. at page 1336, 87 L.Ed. 1796, on which to rest the cancellation of a certificate of naturalization would be lost if the ascertainment by the lower courts whether that exacting standard of proof had been satisfied on the whole record were to be deemed a 'fact' of the same order as all other 'facts', not open to review here."

■ We shall not attempt what the Supreme Court carefully avoided and undertake ourselves to express in a verbal formula what we consider our function to be in these cases. It will be enough to say that while we accord weight to a district court's findings in deference to the wisdom of the general rule of judicial administration based on the opportunity afforded that court to observe witnesses in the flesh and judge their credibility, we do not weight those findings as heavily as we would in other cases of a civil nature.

■ Approaching the case on this basis we disagree with the conclusion reached below. In doing so we recognize that minds can well differ in evaluating the probative force of items of evidence. What may seem clear and unequivocal to one may not seem so to another, and where one may have grave doubts another may have none. The resolution of cases like this lies in the subjective where opinions can well and very often do differ radically. The district courts in the first instance must call the turn as they see it, and we on appeal must do very much the same thing.

The controlling question here is not whether Cufari's arrests were legal, cf. United States v. Kessler, 3 Cir., 1954, 213 F.2d 53, or the seriousness of the charges

laid against him, or the validity of those charges. It is whether Cufari was asked, either at his preliminary examination or at the hearing in the Superior Court of the Commonwealth of Massachusetts, whether he had ever been arrested and had answered in the negative.

No doubt Cufari's docket slip coupled with the evidence of the practice and custom of Examiners generally and of Examiners Davis and Mahoney in particular is enough to establish by the balance of the probabilities that Cufari was asked if he had ever been arrested and answered that he had not. But in 1927, as we have already pointed out, inquiry about arrests in the course of the naturalization process was not required either by statute or departmental regulation. And the case against Cufari is weaker than the case against Brenci which we considered five years ago in that Brenci's slip contains much more detailed information, including information as to his marital status, belief with respect to polygamy etc., than Cufari's on which nothing appears except the brief and somewhat unclear and fragmentary notes reported in full earlier in this opinion. Indeed it is not clear beyond the possibility of question that the notation "no arrests" under the heading Result of Examination does not apply to his father, Filippo, instead of to the applicant Salvatore. Moreover, Brenci's slip was sworn to and Cufari's was not, and Brenci's slip disclosed arrests for minor offenses but not for two serious ones which we thought indicated rather clearly that he had been asked about his arrests and had withheld full disclosure. Furthermore Brenci admitted in a statement to an officer of the Naturalization Service that he had been asked about arrests and had concealed his arrests for serious crimes for the very purpose of obtaining naturalization, whereas Cufari said that he could not remember whether he was ever asked about arrests or not, which is not particularly surprising in view of the lapse of time since 1927.

Perhaps not much more can be said, or needs to be said, than that considering the record as a whole we find ourselves unable to agree with the District Court's conclusion that the Government has established its case by clear, unequivocal, and convincing evidence which does not leave the issue in doubt. It seems to us that the Government must produce stronger and more conclusive evidence than it has produced against Cufari to warrant denaturalizing one who has enjoyed the status of citizen for twenty-six years.

The judgment of the District Court is vacated and set aside and the case is remanded to that Court for the entry of a judgment for the defendant.