Armenouhi **BAGHDASARIAN,**
Defendant, Appellant,

v.

**UNITED STATES** of America,
Plaintiff, Appellee.

No. 4839.

United States Court of Appeals,
First Circuit.

April 13, 1955.

Allan M. Yoffa, Boston, Mass., with whom the Boston Legal Aid Society was on brief, for appellant.

Arthur I. Weinberg, Asst. U. S. Atty., with whom Anthony Julian, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts entered February 5, 1954, vacating the order admitting the defendant to citizenship and canceling the certificate of naturalization issued to her on March 25, 1949. The action was brought under § 338 of the Nationality Act of 1940, 8 U.S.C. § 738 (1946), 54 Stat. 1158 (1940), the relevant part of which is set forth below[1] and which since the commencement of this action has been repealed and superseded by 8 U.S.C. § 1451 (1952), 66 Stat. 260.

The defendant was born on January 18, 1926 in Salonica, Greece, of parents who came from that part of Armenia which had been acquired by Turkey. At the age of nine months she was taken to

[1] "Sec. 338. (a) It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court specified in subsection (a) of section 301 in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground of fraud or on the ground that such order and certificate of naturalization were illegally procured."

France by her parents and lived there until 1946, but never acquired French citizenship. On June 30, 1945, the defendant married Jerry Baghdasarian, an American soldier then stationed in France, and she arrived in New York City on March 22, 1946. Since her arrival the defendant has been a resident of Massachusetts.

On February 17, 1949, the defendant filed an Application for a Certificate of Arrival and Preliminary Form for Petition for Naturalization. There appears in answer to printed form item (26) of said petition, which item reads as follows: "(26) During the last ten (10) years I have been a member of the following organizations and no other" the written words "The Village Congregational Church."

At the trial below an employee of the United States Immigration and Naturalization Service testified that she was both the preliminary and designated examiner assigned to the defendant's case and that she had orally interrogated the defendant under oath with respect to the defendant's membership in organizations. While this examiner could not remember specifically whether she had asked the defendant if she had been a member of the Communist Party or of any organization affiliated with the Communist Party or if she believed in the principles of Communism, the examiner testified that as a matter of form she was required to ask those questions of all applicants and that if the defendant in answer to those questions had admitted membership in the Communist Party such an answer would have been recorded.

On April 4, 1950, approximately one year after the defendant was admitted to citizenship by the Superior Court of Massachusetts in Worcester on March 22, 1949, an investigator employed by the Immigration and Naturalization Service questioned the defendant concerning her answer to item (26) of the Preliminary Form for Petition for Naturalization which related to membership in organizations during the ten years

preceding the execution of that form. According to the report of the interview (Exhibit 4) prepared by the investigator, the defendant admitted that she had joined the Communist Party in 1947 with her husband and had belonged to it for a year and a half. Exhibit 4 also showed that after consultation by the defendant with her husband she later stated that she joined the party in May of 1946, two months after her arrival in this country. The defendant testified at the trial that she could not speak, read or write English when she arrived in this country. On September 11, 1950, the investigator again interviewed the defendant but at this time the defendant stated that she had never joined the Communist Party herself but that her husband had put her in and that she had not learned of this action of her husband until a few months later when she found a membership card with her name on it. While in the earlier interview the defendant had stated that she had just paid her dues and had not attended any meetings or distributed Communist literature, she stated in the second interview that her dues were paid by her with checks made out by her husband.

At the trial the defendant testified that she had never attended any Communist meetings nor had she personally given any money in the payment of dues to any one but that she had thought that her husband's payment of the dues made her responsible for such payments. The defendant was questioned concerning her statement made during the April 4, 1950 interview in answer to the investigator's query as to why she did not disclose her alleged Communist membership on her Preliminary Petition for Naturalization. This statement was "I knew if I put it down I wouldn't get my citizenship papers." The defendant testified that this answer was the result of a conversation with her husband and the true motivating purpose behind her denial of Communist membership in her naturalization proceedings was her belief that she was not a Communist. She further testified on cross-examination that although she

had felt she had never been a member of the Communist Party she told the investigator on April 4, 1950 that she had been a member because of the doubt in her mind concerning her status arising out of the issuance of a Communist membership card bearing her name.

The district court found that the defendant was a member of the Communist Party only by reason of her husband having been enrolled in it and that she had never intended to join the Communist Party and had taken no active part in it. The court further found that after the defendant discovered she was enrolled in the Party she took no efforts to dissociate herself from it. The trial judge stated that the defendant's appearance on the stand disclosed her to be honest and forthright but that the defendant's certificate of naturalization must be revoked.

There are two basic grounds for the Government's claim that the defendant's citizenship was illegally and fraudulently procured. The complaint alleged that the defendant was not of good moral character because of her false statements during the naturalization examination and that the defendant deliberately and intentionally made false statements concerning her Communist Party membership in order to prevent a full and proper investigation of her qualifications for citizenship. The defendant contends that she was never a member of the Communist Party and that she consequently did not make any false statements when she indicated to the naturalization examiner that she was not a Communist. The Government further contends that even if it be held that the defendant was not a member of the Communist Party she knowingly concealed material facts bearing upon her eligibility for citizenship and thus fraudulently procured her citizenship. The Government further contends that an alien has a duty to make a full disclosure to naturalization examiners of all facts relating to the alien's eligibility for citizenship.

We shall first deal with the question of whether the defendant was a member of the Communist Party and thus guilty of a clear misstatement of fact in denying such membership when questioned under oath by the examiner for the Immigration and Naturalization Service. The trial judge found that the defendant was a member of the Communist Party. However, he further found that the defendant became a member "only by reason of her husband having been enrolled in it * * * that she never intended to join the Communist Party, that she took no active part in it." But he also found " * * * after she discovered she was enrolled in the party she took no efforts to dissociate herself. This is very similar to the law of conspiracy. If you want to withdraw from a conspiracy you have to do it by a sharp, definite act; you cannot allow dalliance to serve your departure."

With this reasoning of the trial judge we do not agree. The defendant's husband had no authority to enroll her as a member of the Communist Party. There was no evidence that there was any express ratification of the husband's action or that the defendant ever accepted any of the benefits, if there were any, of her enrollment in the Party. Thus the Government's contention that the defendant ratified this unauthorized act of her husband is not supported by the record. The trial court expressly found that the defendant did not intend to join the Communist Party, and it has been said that membership in an association is a question of intent and cannot be established by any facts which fail to show the existence of an intent that one shall be a member of the association. See Tarbell & Whitham v. Gifford, 1909, 82 Vt. 222, 72 A. 921. The Supreme Court in Galvan v. Press, 1954, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911, interpreted "member" as that term was used in the Internal Security Act of 1950, 64 Stat. 987, 1006, 1008. In that case the defendant, an alien ordered to be deported because of past membership in the Communist Party, had joined the party of his own free will and had attended a number of meetings. He had also been

active in a Communist front organization and had been one of its officers. The Court stated 347 U.S. at page 529, 74 S.Ct. at page 741, that even if the " * * * petitioner was unaware of the Party's advocacy of violence, as he attempted to prove, the record does not show a relationship to the Party so nominal as not to make him a 'member' within the terms of the Act." In the instant case the defendant never joined the Party of her own free will and her relationship with it was, at most, a purely nominal one.

In like manner, the finding by the district court of lack of any intent on the part of the defendant to become a member of the Communist Party, coupled with the complete absence of evidence as to her taking part in any Communist activities, completely negates charging her with joining the Communist conspiracy. Rent v. United States, 5 Cir., 1954, 209 F.2d 893; Mackreth v. United States, 5 Cir., 1939, 103 F.2d 495. And if she never became a member of this conspiracy there was no need for the "sharp, definite act" which the trial court deemed necessary to dissociate herself from the Communist Party.

▆▆ It is a well established principle of law that citizenship may be revoked only if it is shown by clear, unequivocal and convincing evidence that such certificate was illegally or fraudulently procured. Knauer v. United States, 1946, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500; Baumgartner v. United States, 1944, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525; Schneiderman v. United States, 1943, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796 and Brenci v. United States, 1 Cir., 1949, 175 F.2d 90. It is the duty of the court upon review of cases such as this to examine the evidence in order to ascertain whether it meets this high standard of proof. Baumgartner v. United States; supra, Brenci v. United States, supra; Cufari v. United States, 1 Cir., 1954, 217 F.2d 404. We hold that the evidence presented here does not meet that standard of proof especially in view of the weight we accord the district court's finding that the defendant appeared to be honest and forthright.

With respect to the contention that even if the defendant was not a Communist she should have disclosed that her name was on a membership card, the Government has not cited any cases which can be used as authority for such proposition. If the defendant was not a member of the Communist Party, and we have so held, then she made no false representations to the naturalization examiner in denying such membership. It was not incumbent upon her to state that her husband had sought to enroll her as a member of the Communist Party without her consent. The examiner could have asked the defendant if her name had ever appeared on a Communist Party membership card and then a negative answer would be a misrepresentation but that is not the situation which has been presented here.

The judgment of the district court is vacated and set aside and the case is remanded to that court for the entry of a judgment for the defendant.