PREGERSON, Circuit Judge,
dissenting:
The Supreme Court has long held that when the priceless right of United States citizenship is at stake, the government must prove its case by clear, unequivocal, and convincing evidence. Integral to the government’s heavy burden of proof, the Supreme Court established that we are required to independently review such cases and must scrutinize the record ourselves in order to safeguard the right of citizenship. Our precedents have faithfully and consistently followed the Supreme Court’s instructions.
On dubious grounds, the majority declares that in Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) and Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), the Supreme Court impliedly overruled the long line of Supreme Court and Ninth Circuit cases holding that we are required to independently review citizenship cases. See Fedorenko v. United States, 449 U.S. 490, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981); Costello v. United States, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); Chaunt v. United States, 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960); Nowak v. United States, 356 U.S. 660, 78 S.Ct. 955, 2 L.Ed.2d 1048 (1958); Knauer v. United States, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500 (1946); Baumgartner v. United States, 322 U.S. 665, 64 S.Ct. 1240, 88 L.Ed. 1525 (1944); United States v. Delmendo, 503 F.2d 98 (9th Cir.1974); Lim v. Mitchell, 431 F.2d 197 (9th Cir.1970); Stacker v. United States, 258 F.2d 112 (9th Cir.1958).
The majority concludes that when the government seeks to revoke citizenship or to deport a petitioner who claims to be a citizen, Federal Rules of Civil Procedure Rule 52(a)’s clear error standard of review applies. I disagree. Independent review is required. Here, the government has not met its burden to prove by clear, unequivocal, and convincing evidence that Petitioner is not an American citizen.
I. THE RIGHT OF CITIZENSHIP
“Citizenship in the United States of America is among our most valuable rights.” Gorbach v. Reno, 219 F.3d 1087, *1087 1098 (9th Cir.2000) (en banc). It is the right that “protects our life, liberty, and property from arbitrary deprivation.” Id. What is more, all of the opportunities we seek to pass onto our children, “depend on [our children’s] secure rights to stay in this country and enjoy its guarantees of life, liberty, and property, and the domestic peace and prosperity that flow from those guarantees.” Id. at 1099.
“[T]o deprive a person of his [or her] American citizenship is an extraordinarily severe penalty.” Klapprott v. United States, 385 U.S. 601, 612, 69 S.Ct. 384, 93 L.Ed. 266 (1949). “To deport one who so claims to be a citizen obviously deprives him of liberty,” and “[i]t may result also in loss of both property and life, or of all that makes life worth living.” Ng Fung Ho v. White, 259 U.S. 276, 284, 42 S.Ct. 492, 66 L.Ed. 938 (1922). Proceedings determining the loss of citizenship place “the fate of a human being ... at stake.” Knauer v. United States, 328 U.S. 654, 659, 66 S.Ct. 1304, 90 L.Ed. 1500 (1946) (comparing de-naturalization to deportation).
II. THE GOVERNMENT’S BURDEN OF PROOF
I believe that the majority gives short shrift to the policies that underlay the government’s burden of proof and the Supreme Court’s formulation of that burden for citizenship cases. Because of “grave consequences to the citizen,” to revoke his or her citizenship “the evidence must indeed be ‘clear, unequivocal, and convincing’ and not leave ‘the issue in doubt.’” Chaunt v. United States, 364 U.S. 350, 353, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960) (quoting Schneiderman v. United States, 320 U.S. 118, 125, 158, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943)). This is a “heavy” burden of proof. Fedorenko v. United States, 449 U.S. 490, 505, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981).[1]
The government’s burden of proof in deportation proceedings is identical to the burden of proof in denaturalization proceedings. This is so because the Supreme Court has analogized deportation to denat-uralization and concluded that “[n]o less a burden of proof is appropriate in deportation proceedings.” Woodby v. INS, 385 U.S. 276, 285-86, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (finding “many resident aliens have lived in this country longer and established stronger family, social, and economic ties here than some who have become naturalized citizens”); Alocozy v. USCIS, 704 F.3d 795, 799 (9th Cir.2012). In deportation proceedings concerning a petitioner’s claim of United States citizenship, the government bears the “ultimate burden” of establishing foreign birth by “clear, unequivocal, and convincing evidence.”[2] Chau v. INS, 247 F.3d 1026, *1088 1029 n. 5 (9th Cir.2001); Ayala-Villanueva v. Holder, 572 F.3d 736 (9th Cir.2009).
The Supreme Court has emphasized that the high burden of proof in citizenship cases acknowledges that “[n]ew relations and new interests flow, once citizenship has been granted.” Baumgartner v. United States, 322 U.S. 665, 675, 64 S.Ct. 1240, 88 L.Ed. 1525 (1944). In Baumgartner, the Supreme Court rejected the government’s attempt to “make[ ] an alien out of a man ten years after he was admitted to citizenship.” Id. at 677, 64 S.Ct. 1240. In this case, the government seeks to revoke citizenship claimed by an eighty-one year old man who contends he was born an American citizen and whose children all derived citizenship or legal permanent resident status through him over thirty-five years ago. The “[s]evere consequences” arising from the loss of citizenship may be “aggravated when the person has enjoyed his citizenship for many years.” Costello v. United States, 365 U.S. 265, 269, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961). All the blessings of United States citizenship “should not be undone unless the proof is compelling that [citizenship] which was granted was [not properly] obtained.” Baumgartner, 322 U.S. at 675, 64 S.Ct. 1240.
III. STANDARD OF APPELLATE REVIEW
A. The Crucial Role of Independent Review in Citizenship Cases
The majority fails to recognize that our exercise of independent review in citizenship cases plays a crucial role in assuring that the government’s heavy burden of proof has been met. In Baumgartner, the Supreme Court instructed that the government’s heavy burden to revoke citizenship “would be lost” if the lower courts’ determination “whether that exacting standard of proof had been satisfied” was not open to independent review by the appellate court. Baumgartner, 322 U.S. at 671, 64 S.Ct. 1240 (internal citation omitted). Consequently, the appellate court must make its own determination whether “the evidence ... measure[s] up to the standard of proof which must be applied to [a denatu-ralization] case.” Id. at 672, 64 S.Ct. 1240. Baumgartner explained that this standard of appellate review “is usually differentiated from review of ordinary questions of fact by being called review of a question of law.” Id. at 671, 64 S.Ct. 1240.
Independent appellate review is justified, much like the government’s heavy burden of proof, in light of the valuable rights at stake. See Edward H. Cooper, Civil Rule 52(a): Rationing and Rationalizing the Resources of Appellate Review, 63 Notre Dame L.Rev. 645, 668 (1988) (“The sweeping review practiced in Baum-gartner was explained in part on the basis of the same policies as require clear proof.... [T]he Court was surely right to take a close look.”). The Supreme Court has emphasized that because “[t]he issue in [denaturalization] cases is so important to the liberty of the citizen[,] the weight normally given concurrent findings of two lower courts does not preclude reconsideration here.” Chaunt v. United States, 364 U.S. 350, 353, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960). “For denaturalization, like deportation, may result in the loss ‘of all that makes life worth living.’ ” Knauer, 328 U.S. at 659, 66 S.Ct. 1304 (quoting Ng Fung Ho, 259 U.S. at 284, 42 S.Ct. 492). If the law were otherwise, “valuable rights” would be vulnerable to “the political temper of majority thought and the stresses of the times.” Id. at 658-59, 66 S.Ct. 1304 (internal quotations and citation omitted).
Since Baumgartner, an unbroken line of Supreme Court cases has held that when citizenship is at stake, the appellate court *1089 makes an independent review of the record to determine whether the government met its heavy burden to present clear, unequivocal, and convincing evidence to prove its case. See, e.g., Fedorenko, 449 U.S. at 506, 101 S.Ct. 737 (explaining “in reviewing denaturalization cases, we have carefully examined the record ourselves” (citations omitted)); Costello v. United States, 365 U.S. 265, 272, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961) (“examin[ing] the record to determine if the evidence leaves ‘the issue in doubt’”); Chaunt, 364 U.S. at 353, 81 S.Ct. 147 (stating reconsideration is appropriate given the rights at stake); Nowak v. United States, 356 U.S. 660, 661-62, 78 S.Ct. 955, 2 L.Ed.2d 1048 (1958) (explaining “[w]here citizenship is at stake the Government carries [a] heavy burden” and “it becomes our duty to scrutinize the record with the utmost care”); Knauer, 328 U.S. at 657, 66 S.Ct. 1304 (“We reexamine the facts to determine whether the United States has carried its burden of proving [denaturalization] by ‘clear, unequivocal, and convincing’ evidence, which does not leave ‘the issue [of citizenship] in doubt....’” (citation omitted)).
Our circuit precedent accordingly holds that when citizenship is at stake, “[we] must make an independent determination as to whether the evidence introduced by the [government] was ‘clear, unequivocal, and convincing.’ ” Lim, 431 F.2d at 199 (citation omitted). In Lim v. Mitchell, we reviewed an action initiated by petitioner Lim against the Attorney General of the United States for a judgment declaring Lim to be a citizen of the United States. Id. at 198-99. We did not hesitate to apply the independent appellate review that had been established in denaturalization precedents because the denial of Lim’s claim to citizenship was “in its consequences ‘more serious than a taking of one’s property, or the imposition of a fíne or other penalty.’ ” Id. at 199 (quoting Schneiderman, 320 U.S. at 122, 63 S.Ct. 1333).[3] In our view, a judgment declaring a petitioner to be a non-citizen has the same “practical effect ... [as] a decision favorable to the Government in a denatu-ralization case” because “the individual is stripped of ... the ‘priceless benefits’ which derive from the status of citizenship.” Lee Hon Lung v. Dulles, 261 F.2d 719, 720, 724 (9th Cir.1958) (quoting Schneiderman, 320 U.S. at 122, 63 S.Ct. 1333).[4] Thus, under Lim, a judgment declaring a petitioner to be a non-citizen, as *1090 we have here, is subject to independent review.[5]
Of course, we have likewise held that “[i]n reviewing denaturalization ..., we are not bound by the district court’s findings even if they are not clearly erroneous.” United States v. Delmendo, 503 F.2d 98, 100 n. 2. (9th Cir.1974) (citation omitted). Instead, “[w]e must come to our own conclusion as to the facts.” Stacker v. United States, 258 F.2d 112, 120 (9th Cir.1958).
B. Pullman-Standard v. Swint and Anderson v. City of Bessemer City, N.C. Did Not Overrule Independent Appellate Review for Citizenship Cases
Despite the Supreme Court’s steadfast history of independent review for citizenship cases, the majority believes that Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) and Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) impliedly overruled these precedents and require us now to apply deferential review under Rule 52(a).[6] But how can this be so? For nearly seventy years the rule has been that independent appellate review is required to ensure that the government has met its high burden of proof when citizenship is at stake because of the significant rights and the severe consequences involved.
Neither Pullman-Standard nor Anderson implicitly overruled this well-established precedent for three reasons: (1) Pullman-Standard and Anderson held that a question of fact is subject to clear error review under Rule 52(a), but Baum-gartner established that whether the government has met its heavy burden to revoke citizenship is a question of law; (2) the Supreme Court continues to rely on Baumgartner’s reasoning in distinguishing between questions of fact subject to Rule 52(a), and questions of law deserving independent appellate review; and (3) the Supreme Court’s nearly seventy years of precedents requiring independent review for citizenship cases weigh heavily against the majority’s conclusion that these precedents have been impliedly overruled and swept away. I now address each point in turn.
First, the majority incorrectly presumes that Baumgartner, which established independent review for citizenship cases, involves a question of fact like Pullmartr-Standard and Anderson. It does not.
The Supreme Court has acknowledged “ ‘the vexing nature’ ” of the distinction between questions of fact and questions of law. Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 501, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) (quoting Pullman-Standard, 456 U.S. at 288, 102 S.Ct. 1781). Nevertheless, the difficulty in *1091 drawing the line “does not ... diminish its importance.” Id. “[T]he practical truth [is] that the decision to label an issue a ‘question of law,’ a ‘question of fact,’ or a ‘mixed question of law and fact’ is sometimes as much a matter of allocation as it is of analysis.” Miller v. Fenton, 474 U.S. 104, 113-14, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). When Congress has not expressly spoken, “the fact/law distinction at times has turned on a determination that ... one judicial actor is better positioned than another to decide the issue in question.” Id. at 114, 106 S.Ct. 445. “Where the line is drawn varies according to the nature of the substantive law at issue.” Bose Corp., 466 U.S. at 501 n. 17, 104 S.Ct. 1949.
Baumgartner is an example of the Court making a determination, where Congress has not spoken, to designate an issue a question of fact or law. In Baumgartner, the Court articulated its standard of independent appellate review for what it described as a finding of “ultimate ‘facts,’ ” which “clearly implies the application of standards of law.” Baumgartner, 322 U.S. at 671, 64 S.Ct. 1240. The Court noted that “the conclusion that may appropriately be drawn from the whole mass of evidence is not always the ascertainment of the kind of ‘fact’ that precludes consideration by this Court.” Id. At times, independent review, which is typically called “review of a question of law,” is needed to review a finding that implies the application of standards of law. Id. Independent appellate review is particularly needed to review “broadly social judgments — judgments lying close to opinion regarding the whole nature of our Government and the duties and immunities of citizenship.’ ” Id.
Baumgartner concluded that a judgment concerning the loss of citizenship requires independent review. Id. The “importance of clear, unequivocal, and convincing proof, on which to [revoke citizenship] would be lost if the ascertainment by the lower courts whether that exacting standard of proof had been satisfied on the whole record were to be deemed a fact of the same order as all other facts, not open to review here.” Id. (internal quotations and citation omitted). Baumgartner thus described whether the government has met its heavy burden as a question of law in light of the Court’s determination that the appellate court is best suited to safeguard the precious right of citizenship. See Cooper, supra, 63 Notre Dame L.Rev. at 668 (explaining Baumgartner involved “law application”).
In contrast, Pullman-Standard only held that the Federal Rules of Civil Procedure Rule 52(a) is applicable to “a pure question of fact,” there, the finding of intentional discrimination. 456 U.S. at 288-89, 102 S.Ct. 1781. Likewise, Anderson held that “[b]ecause a finding of intentional discrimination is a finding of fact,” the district court’s finding of discrimination is reviewed for clear error under Rule 52(a). Anderson, 470 U.S. at 573, 105 S.Ct. 1504. In Pullmanr-Standard and Anderson the nature of the question at hand was clear. Congress has expressly provided that “the question of intentional discrimination under § 703(h) [of Title VII of the Civil Rights Act of 1964] is a pure question of fact.” Pullman-Standard, 456 U.S. at 286 n. 16, 102 S.Ct. 1781 (emphasis added).
Importantly, Pullman-Standard expressly distinguished Baumgartner as not involving a question of fact. Pullman-Standard explained that “Baumgartner’s discussion of ‘ultimate facts’ referred not to pure findings of fact — as we find discriminatory intent to be in this context— but to findings that ‘clearly impl[y] the application of standards of law.’ ” Pullman-Standard, 456 U.S. at 286 n. 16, 102 S.Ct. 1781 (alteration in original) (quoting Baumgartner, 322 U.S. at 671, 64 S.Ct. 1240). PullmanStandard emphasized *1092 “discriminatory intent ... is not a question of law and not a mixed question of law and fact.” Id. at 289, 102 S.Ct. 1781. Therefore, in Pullman-Standard and Anderson, the Supreme Court did not hold that Rule 52(a) applies to findings that imply the application of standards of law, as we have in this case, because no such finding involving law was before the Court.[7] Nor does Pullman-Standard and Anderson tell us anything about where the Court draws the line between a question of fact and law in citizenship cases because Pullman-Standard and Anderson involved a different area of substantive law — not the loss of citizenship.
Pullman-Standard and Anderson thus had nothing to do with the independent appellate review required for citizenship cases and did not implicitly overrule the Supreme Court’s citizenship precedents. See Agostini v. Felton, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (cautioning courts against concluding that “recent cases have, by implication, overruled an earlier precedent”). Indeed, after Pullman-Standard and Anderson, the Supreme Court has continued to emphasize “the unusually high burden of proof in denaturalization cases” with reference to Baumgartner. See Kungys v. United States, 485 U.S. 759, 776, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988) (citing Baumgartner, 322 U.S. at 670, 64 S.Ct. 1240; Schneiderman, 320 U.S. at 158, 63 S.Ct. 1333).
Second, the majority ignores that the Supreme Court has continued to apply BaumgartnePs reasoning in carving out substantive issues from the scope of Rule 52(a). In Bose Corp. v. Consumers Union of United States, Inc., the Supreme Court addressed the proper standard of appellate review for the “determination that a false statement was made with the kind of ‘actual malice’ ”[8] required in certain defamation actions. 466 U.S. at 487, 104 S.Ct. 1949.
The Supreme Court’s prior “cases raising First Amendment issues ... ha[d] repeatedly held that an appellate court has an obligation to make an independent examination of the whole record” to ensure that the judgment did not violate the right of free speech. Id. at 499, 104 S.Ct. 1949 (internal quotations and citation omitted). The Court rejected the argument that Rule 52(a) eviscerates the appellate court’s well-established independent review. Id. at 499-514, 104 S.Ct. 1949. Independent appellate review for First Amendment cases “reflects a deeply held conviction that judges ... must exercise such review in order to preserve the precious liberties established and ordained by the Constitution.” Id. at 510-11, 104 S.Ct. 1949. Consequently, notwithstanding Rule 52(a), an appellate court “must exercise independent judgment and determine whether the record establishes actual malice with convincing clarity.” Id. at 514, 104 S.Ct. 1949; see also Snyder v. Phelps, — U.S. -, 131 S.Ct. 1207, 1216, 179 L.Ed.2d 172 (2011) (quoting Bose in determining that reviewing courts make an “independent examination of the whole record” in First Amendment cases).
Bose demonstrates that the Supreme Court continues to embrace the heart of Baumgartner’s reasoning in making the distinction between a question of fact — and *1093 a question of law deserving independent review. As in Baumgartner, although the Supreme Court has referred to “actual malice as [an] ‘ultimate fact,’ ” actual malice constitutes a finding implying the application of standards of law. Bose Corp., 466 U.S. at 498 n. 15, 104 S.Ct. 1949; id. at 500-11, 104 S.Ct. 1949 (listing cases where the court independently reviewed actual malice to ensure that the constitutional standard had been met). Bose quoted Baumgartner’s explanation of when independent review is justified for findings implying the application of standards of law:
[T]he conclusion that may appropriately be drawn from the whole mass of evidence is not always the ascertainment of the kind of ‘fact’ that precludes consideration by [the appellate court]. Particularly is this so where a decision here for review cannot escape broadly social judgments — judgments lying close to opinion regarding the whole nature of our Government and the duties and immunities of citizenship.
Id. at 500 n. 16, 104 S.Ct. 1949 (citation omitted) (quoting Baumgartner, 322 U.S. at 670-71, 64 S.Ct. 1240 and citing Pullman-Standard, 456 U.S. at 286-87 n. 16, 102 S.Ct. 1781).
Bose concluded that whether actual malice has been established is a question of law in light of the Court’s determination that the appellate court must safeguard First Amendment rights. Id. at 500-11, 104 S.Ct. 1949; see also Harte-Hanks Commc’ns v. Connaughton, 491 U.S. 657, 685, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) (stating “whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law ” (emphasis added)). Echoing the same principles in Baumgart-ner and its progeny, the Supreme Court emphasized that “the rule of independent review assigns to judges a constitutional responsibility that cannot be delegated to the trier of fact, whether the factfinding function be performed in the particular case by a jury or by a trial judge.” Bose Corp., 466 U.S. at 501, 104 S.Ct. 1949.
Just as independent review in First Amendment cases preserves the right of free speech established by the Constitution, independent review in citizenship cases preserves the “most precious right” of citizenship that “is expressly guaranteed by the Fourteenth Amendment to the Constitution.” Kennedy v. Mendoza-Martinez, 372 U.S. 144, 159, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). Thus, Bose and its progeny tell us that the long history of an appellate court’s obligation to conduct an independent review to protect the right of citizenship remains intact despite Rule 52(a).[9]
Third, the majority disregards the Supreme Court’s admonition that “[v]ery weighty considerations underlie the principle that courts should not lightly overrule past decisions.” Miller v. Fenton, 474 U.S. 104, 115, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) (internal quotations and citation omitted); see also Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (instructing that “[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which di *1094 rectly controls, leaving to this Court the prerogative of overruling its own decisions”).
For instance, in Miller v. Fenton, the Supreme Court held that “an unbroken line of cases, coming to this Court ... forecloses the Court of Appeals’ conclusion that the ‘voluntariness’ of a [criminal defendant’s] confession merits something less than independent federal consideration.” 474 U.S. at 112, 106 S.Ct. 445. The Supreme Court emphasized that “nearly a half century of unwavering precedent weighs heavily against any suggestion that we now discard the settled rule in this area.” Id. at 115, 106 S.Ct. 445. Similarly, in Ornelas v. United States, the Supreme Court resolved a circuit split and held that under the Fourth Amendment, review of a warrantless search requires “independent appellate review of the[ ] ultimate determinations of reasonable suspicion and probable cause,” which was the approach “consistent with the position we have taken in past cases.” 517 U.S. 690, 695, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). The Court underscored that in its prior precedents, the Court “ha[s] never, when reviewing a probable-cause or reasonable-suspicion determination ourselves, expressly deferred to the trial court’s determination.” Id. So too in Bose, the Supreme Court “reaffirm[ed] the principle of independent appellate review [for First Amendment cases] that we have applied uncounted times before.” Bose Corp., 466 U.S. at 514, 104 S.Ct. 1949.
The majority has failed to give due consideration to the over seventy years of unbroken precedents from the Supreme Court in citizenship cases. Time and time again, the Supreme Court has emphasized the preciousness and importance of citizenship and the crucial role of an appellate court’s independent review. Had the Supreme Court intended to overrule the appellate court’s deep rooted obligation to protect the right of citizenship, it would have said so.
C. The First Circuit Has Held the Supreme Court’s Citizenship Cases Have Not Been Overruled
In direct contrast to the majority’s conclusion, our sister circuit, the First Circuit has concluded that independent review for denaturalization cases has not been overruled. Almost sixty years ago, the First Circuit held that Baumgartner did not suggest “that we might reverse only when we were of the opinion that the district court was ‘clearly erroneous’ in its conclusion” that the government has met its heavy burden of proof. Cufari v. United States, 217 F.2d 404, 408 (1st Cir.1954). Instead, “[i]t is the duty of the court upon review of [denaturalization] cases ... to examine the evidence in order to ascertain whether it meets [the requisite] high standard of proof.” Baghdasarian v. United States, 220 F.2d 677, 680 (1st Cir.1955).
The First Circuit affirmed independent review after Pullman-Standard and Anderson. In United States v. Zajanck-auskas, “after looking at several Supreme Court cases in which the Court made clear that denaturalization cases are of an unusual nature,” the First Circuit affirmed that in denaturalization cases, “ ‘while we accord weight to a district court’s findings ..., we do not weight those findings as heavily as we would in other cases of a civil nature.’” 441 F.3d 32, 37-38 (1st Cir.2006) (quoting Cufari, 217 F.2d at 408). In so holding, the First Circuit expressly held that the Supreme Court’s citizenship precedents “are still valid and have not been overruled in any way,” and noted that Anderson “[had] nothing to do with denat-uralization.” Id. at 38 n. 5. I agree with the First Circuit’s sound reasoning.
For the foregoing reasons, I cannot accept the majority’s conclusion that Pull *1095 man-Standard and Anderson overruled— by implication — Baumgartner and its progeny. It follows that our precedent, Lim v. Mitchell, which relies on Baum-gartner's progeny, controls the appellate standard of review in this case. Thus, we are required to conduct an independent review of the evidence in the record to determine whether that evidence is sufficient to satisfy the government’s heavy burden to show by clear, unequivocal, and convincing evidence that Petitioner is a Mexican citizen, not a United States citizen. See supra Part III.A; United States v. Gay, 967 F.2d 322, 327 (9th Cir.1992) (holding a “three judge panel ... cannot reconsider or overrule the decision of a prior panel” unless “an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point” (internal quotations and citation omitted)).
IV. THE GOVERNMENT FAILED TO PROVE ITS CASE BY CLEAR, UNEQUIVOCAL, AND CONVINCING EVIDENCE
The district court correctly determined that Petitioner carried his initial burden of proving by a preponderance of the evidence that he is an American citizen by the name of Reynaldo Mondaca. Petitioner’s evidence demonstrating that he is Reynaldo Mondaca was as follows:
Petitioner testified that he is Reynaldo Mondaca Carlon, born in Imperial, California, on July 17, 1931 to parents Antonia Carlon and Marin Mondaca. Petitioner presented an authentic birth certificate for Reynaldo Mondaca Carlon.
Although born in California, Petitioner’s parents took him back to Mexico, where he grew up in El Fuerte, Sinaloa, Mexico. Petitioner did not learn to speak English, only Spanish. In Mexico, Petitioner worked with his parents as a farmer.
When Petitioner was around 20 years old, he came back to the United States for the first time. In the United States, Petitioner worked in the fields, primarily with people from Mexico.
Petitioner then returned to Mexico. He learned that he was an American citizen when he was given his birth certificate by his mother. Petitioner used his birth certificate to come back to the United States, specifically, California and Washington.
It is undisputed that Reynaldo Mondaca applied for a social security card on May 23, 1953. The application indicated that his parents were Antonia Carlon and Marin Mondaca and that he was born on July 17, 1931, in Imperial, California. The parties also stipulated that “[according to handwriting analyses provided by experts for both parties, ... the signature on the application (‘Reynaldo C. Mondaca’) appears to be made by Petitioner.”[10] Petitioner’s social security card is under the name Reynaldo Mondaca, and Petitioner has always used the Social Security number associated with the card. Petitioner qualifies for Social Security benefits.
Petitioner met his wife (now deceased) in El Fuerte, Mexico. Petitioner and his wife had nine children, three of whom were born in the United States. Petitioner presented a marriage certificate and baptismal certificates for his children, all of which indicate that he is Reynaldo Mon-daca. Petitioner’s passport, issued by the U.S. Department of State, is also under the name Reynaldo Mondaca.
*1096 For several years after Petitioner and his wife were married, Petitioner’s wife and children lived in Mexico, while Petitioner worked in California. Petitioner would return to Mexico about once a year to spend time with his family. Eventually, Petitioner brought his entire family to the United States.
In 1977, Petitioner’s six children born in Mexico obtained United States citizenship or Lawful Permanent Resident status through Petitioner’s status as a United States citizen. Also in 1977, Petitioner’s wife became a Legal Permanent Resident based on Petitioner’s status as a United States citizen.
Because Petitioner established a prima facie case that he is an American citizen named Reynaldo Mondaca, the government was required to present clear, unequivocal, and convincing evidence that Petitioner was not who he claimed to be. Specifically, the government claimed that Petitioner is a Mexican citizen named Salvador Mondaca-Vega, who was born in El Mahone, Sinaloa, Mexico on June 3,1931.[11]
Upon review of the record, I do not believe that the government met its high burden. The district court made numerous findings that are either not supported by the record or are based on speculation. Here are some examples.
1. As the majority recognizes and both parties agree, there is no evidence in the record to support the district court’s findings that Petitioner was deported in July 1951, September 1951, and November 1952. Maj. at 1085-86.
2. The majority concedes that the district court engaged in speculation when it determined that Petitioner was required to present his birth certificate when applying for a social security card in May 1953. Maj. at 1085-86. That speculation is problematic. It led the district court to incorrectly conclude that Petitioner did not rightfully possess an authentic United States birth certificate.
The district court incorrectly reasoned that Petitioner would have had to obtain his birth certificate before applying for his social security card. The district court took judicial notice of geographical distances to conclude that “[i]t would have been extremely difficult, if not impossible” for Petitioner to have retrieved a birth certificate from his mother in El Fuerte, prior to applying for a social security card in Calexico, California, on May 23, 1953. From there, the district court concluded that Petitioner must have obtained his Reynaldo Mondaca birth certificate “at some location near the border between the United States and Mexico on either May 22nd or May 23rd.” There is no evidence in the record to support the district court’s conclusion that Petitioner obtained his birth certificate in this manner. Rather, the only evidence in the record is that Petitioner obtained his birth certificate from his mother.
3.The district court further speculated that when Petitioner was detained by INS, Petitioner always had his birth certificate, and that Petitioner’s failure to identify himself as Reynaldo Mondaca was “inexplicable.” The district court seemed to believe that this is contrary to how an American citizen would act. But Petitioner, who does not speak English, stated he used an alias when he did not have his birth certificate and U.S. passport with him to show his United States citizenship. The district court speculated when it assumed what *1097 someone in Petitioner’s position would or would not have done in the early 1950s. See Chawla v. Holder, 599 F.3d 998, 1006 (9th Cir.2010) (holding that the “BIA’s disbelief of Chawla’s decision ... was based on speculation and conjecture about what someone in Chawla’s position would or would not do”); Zhou v. Gonzales, 437 F.3d 860, 865 (9th Cir.2006) (holding that the Id’s “disbelief of Zhou’s testimony was ... based on speculation and conjecture about Zhou’s position in Chinese society and what someone in that position would or would not do”).
4. The district court also speculated that each time Petitioner was deported it was contrary to his financial interest, and thus, implausible that he would not have identified himself as an American citizen. The district court speculated that on July 28, 1953, it was “a busy time of year for an agricultural laborer,” and thus, it would “not [have been] in the petitioner’s financial interest to be removed from the United States at this time.” Similarly, the district court presumed that when Petitioner was detained on September 15, 1954, there was “a great deal of agricultural work,” and it “was in the petitioner’s financial interest to remain in the United States.” There is no evidence in the record to support the district court’s findings regarding the employment opportunities for a farm worker, Petitioner’s financial motives, or how conditions at the border were controlled in the early 1950s. See United States v. Berber-Tinoco, 510 F.3d 1083, 1091 (9th Cir.2007) (“A trial judge is prohibited from relying on his personal experience to support the taking of judicial notice.” (internal quotations and citation omitted)); Paramasamy v. Ashcroft, 295 F.3d 1047, 1052 (9th Cir.2002) (holding that “the IJ improperly substituted her own hypothesis for the evidence in the record” when she acknowledged that “Paramasamy was afraid to return to Sri Lanka” but “then speculated about Para-masamy’s ‘real’ motives” including ‘“the anticipation of better job opportunities’ ”).
5. Finally, the district court speculated that Petitioner began using the name Reynaldo Mondaca because of his marriage and his desire to obtain benefits. Not only is this finding not supported by the record, but the evidence demonstrates that Petitioner used his name Reynaldo Mondaca in 1953, almost twenty years prior to his marriage, when he applied for a social security card.
V. CONCLUSION
The majority incorrectly applies clear error review because of its erroneous conclusion that independent review for citizenship cases has been implicitly overruled. On review of the record, because of the numerous findings based on speculation and findings unsupported by evidence, the government failed to prove by clear, unequivocal, and convincing evidence that Petitioner is a Mexican citizen whose name is Salvador Mondaca-Vega. See, e.g., Lim, 431 F.2d at 200 (holding that “although there was some evidence tending to show that appellant’s family name was Jew rather than Lim, [the government] did not meet its burden of proving [attainment of citizenship through] fraud or error by clear, unequivocal and convincing evidence”). In fact, where, as here, there is “conflicting evidence” it cannot be said that the government has carried its burden to prove by evidence “which does not leave the issue in doubt” that Petitioner is Salvador Mondaca-Vega, and not Reynaldo Mondaca. Schneiderman, 320 U.S. at 158, 63 S.Ct. 1333 (internal quotations omitted). Notably, the government did not present any evidence that anyone other than Petitioner has ever claimed to be Reynaldo Mondaca.
Even if the proper appellate standard of review here is for clear error, the district *1098 court clearly erred in finding that the government met its burden. The majority contends that there was no clear error because “[s]ome of the challenged findings are not clearly erroneous” and that the “errors pertain to inconsequential points.” Maj. at 1084, 1086.[12] As discussed above, however, the district court’s erroneous findings are numerous and central to the district court’s conclusion that the government proved its case. I do not believe that the remaining findings are sufficient to satisfy the government’s burden to prove by clear, unequivocal, and convincing evidence that Petitioner is Salvador Mon-daca-Vega, a Mexican citizen. Thus, Petitioner is who he claims to be, an American citizen, Reynaldo Mondaca. I would GRANT the petition. Therefore, I dissent.

. In 1961, Congress enacted 8 U.S.C. § 1105a(a)(5), which now appears with minimal modification at 8 U.S.C. § 1252(b)(5), that codified judicial review of deportation orders "in which the person subject to deportation claims to be a United States citizen.” Agosto v. INS, 436 U.S. 748, 752-53, 98 S.Ct. 2081, 56 L.Ed.2d 677 (1978). “In carving out this class of cases, Congress was aware of [the Supreme Court's] past decisions holding that the Constitution requires that there be some provision for de novo judicial determination of claims to American citizenship in deportation proceedings.” Id. at 753, 98 S.Ct. 2081; see, e.g., Ng Fung Ho, 259 U.S. at 285, 42 S.Ct. 492.

. A person "may pursue a citizenship claim in two ways.” Lopez v. Holder, 563 F.3d 107, 110 (9th Cir.2009) (internal quotations and citation omitted). A person may: (1) "assert citizenship as a defense to a removal proceeding,” if unsuccessful, and after exhausting administrative remedies, he may petition for a judicial declaration of citizenship under 8 U.S.C. § 1252(b); or (2) "seek proof of citizenship by filing an application for citizenship under 8 U.S.C. § 1452(a),” if it is denied, and after exhausting administrative remedies, he may petition for a judicial declaration of citizenship under 8 U.S.C. § 1503. Id. This case concerns the former, Lim concerned the latter.

. In one exception, we applied Rule 52(a) instead of independent review under Lim in reviewing a petition under 8 U.S.C. § 1105a(a)(5) on the grounds that there "ha[dj been no prior determination of citizenship” upon which "both the petitioner and the government had relied for many years.” Sanchez-Martinez v. INS, 714 F.2d 72, 73-74 (9th Cir.1983). That exception is not applicable here because the government made prior determinations of citizenship through granting Petitioner’s family derivative citizenship based on Petitioner's citizenship and by also issuing Petitioner a passport. See 22 U.S.C. § 2705 (stating a valid passport "shall have the same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship”); Lim, 431 F.2d at 198 (noting government had issued petitioner a passport as a citizen and petitioner’s wife and daughter had obtained derivative citizenship through petitioner).

. In denaturalization cases, the consequence is the revocation of citizenship. In deportation cases such as this, the consequence of erroneously deporting a petitioner — is the exile of an American citizen. It is inconceivable that the potential exile of an American citizen is any less deserving of independent review. Cf. Kwock Jan Fat v. White, 253 U.S. 454, 464, 40 S.Ct. 566, 64 L.Ed. 1010 (1920) ("It is better that many ... immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his countiy.”). In fact, the Supreme Court has found that the “immediate hardship of deportation is often greater than that inflicted by denaturalization” when the deportee is an alien, let alone a deportee claiming to be an American citizen. See Woodby, 385 U.S. at 286, 87 S.Ct. 483.

. Rule 52(a) provides that for an action tried by the court instead of by a jury, the court must "find the facts specially,” and on review, those factual findings will be set aside only if "clearly erroneous.” Fed.R.Civ.P. 52(a)(1), (6).

. Rule 52(a) does not apply to conclusions of law. Fed.R.Civ.P. 52(a)(1), (6). Moreover, Pullman-Standard, expressly stated that it was not addressing the applicability of Rule 52(a) to “mixed questions of law and fact.’’ Pullman-Standard, 456 U.S. at 289 n. 19, 102 S.Ct. 1781.

. Actual malice is " 'knowledge that [a statement] was false or with reckless disregard of its truth or falsity.’ ” Bose Corp., 466 U.S. at 491, 104 S.Ct. 1949 (citation omitted).

. The majority mischaracterizes Bose as narrowly applying independent review. Maj. at 1080. The scope of independent review is governed by the constitutional issue at hand. Bose Corp., 466 U.S. at 499-514, 104 S.Ct. 1949; Baumgartner, 322 U.S. at 671, 64 S.Ct. 1240. While independent review in Bose pertains to the constitutional issue of whether actual malice has been established, in citizenship cases independent review is necessarily broader because the constitutional issue is whether the burden of revoking citizenship has been met — the primary and only issue in this case.

. In 1952 someone claiming to be Salvador Mondaca-Vega applied for a social security card, but the government did not present any evidence tying that application to Petitioner. Unlike Reynaldo Mondaca’s application, Salvador Mondaca-Vega’s application does not contain a signature.

. The government contends that the “ultimate issue in this case is whether Petitioner is Salvador Mondaca-Vega ... or Reynaldo Mondaca Carlon.” See also Maj. at 1086 (holding that "the district court’s key finding, that Petitioner is Salvador Mondaca-Vega, is not clearly erroneous”).

. The majority relies on Societe Generate de Banque v. Touche Ross & Co. (In re U.S. Fin. Sec. Litig.), 729 F.2d 628 (9th Cir.1984), to conclude that it may affirm the district court on any evidence that supports the district court’s judgment. Maj. at 1085-86. In that case, the “basis for the court’s decision pro-vid[ed] a sufficient understanding of the issues without a remand for further findings.” In re U.S. Fin. Sec. Litig., 729 F.2d at 630. I do not believe that, absent the speculative and clearly erroneous findings, the basis of the district court’s decision remains clear in this case.