George LIM, Appellant,

v.

John N. MITCHELL, as Attorney General of the United States, et al., Appellee.

No. 23787.

United States Court of Appeals, Ninth Circuit.

Aug. 21, 1970.

198

Robert E. Hinerfield (argued), and Richard A. Murphy, of Simon, Sheridan, Murphy, Thornton & Medvene, Los Angeles, Cal., for appellant.

James R. Dooley (argued), Asst. U. S. Atty., Robert L. Meyer, U. S. Atty., Frederick M. Brosio, Jr., Chief, Civil Division, Los Angeles, Cal., for appellee.

Before HAMLEY, BROWNING and TRASK, Circuit Judges.

TRASK, Circuit Judge:

George Lim brought this action against the Attorney General of the United States for a judgment declaring him to be a citizen of the United States.[1] Following a non-jury trial of some nine days duration, the district court entered judgment for the Attorney General. Lim appeals from that judgment.[2] We reverse.

The facts may be summarized as follows: Appellant was born in China in 1917. He sought to enter the United States in April, 1932, as Lim Len Hang, the son of Lim Jew—who was a derivative citizen of the United States because his father—appellant's grandfather, Lim Sam—was a citizen, having been born in the United States in approximately 1876, and admitted into this country as a native-born citizen in 1899 and 1909. Appellant's father had been admitted into the United States as a derivative citizen in 1908, 1916 and 1930, and had been issued a certificate of identity in 1916.

Appellant was not readily admitted into the country in 1932. After a four-day hearing between April 22 and 26, 1932, the Board of Special Inquiry voted to exclude him on the ground that he was not the true son of Lim Jew. This decision was reversed by a Board of Review, and appellant was issued a certificate of identity on June 6, 1932. The government issued appellant passports as a citizen in 1947 and 1963. Appellant's wife and daughter were admitted to the United States in 1952 as the wife and child of a citizen. Appellant has become

1. Jurisdiction was alleged under 28 U.S.C. § 2201, 8 U.S.C. § 1503(a), 5 U.S.C. § 1009, and 28 U.S.C. § 1361.

2. This court has jurisdiction under 28 U.S.C. §§ 1291 and 1294(1).

a successful restaurant owner in Los Angeles and a highly respected member of the community.

The Immigration and Naturalization Service began to question appellant's citizenship at least as early as 1955 when he initiated attempts to bring one or more of his brothers to the United States. Because of the Service's doubts, in 1966 appellant filed an application with the Service for issuance of a certificate of citizenship pursuant to Section 341 of the Immigration and Nationality Act, 8 U.S.C. § 1452.[3] On August 23, 1967, the District Director of the Immigration and Naturalization Service denied appellant's application and the Regional Commissioner affirmed this denial on October 30, 1967.

At trial in the district court commencing on March 19, 1968, the Service admitted that appellant's father was Lim Jew. It claimed, however, and the district court found, that this man's true name was Jew Hoy Yin and that appellant's true name was Jew Len Hang rather than Lim Len Hang. The court also found that appellant's grandfather was not the United States citizen, Lim Sam, but was Jew Look, who was born in China, and therefore appellant had no valid claim to derivative citizenship.

■ As plaintiff below, Lim had the burden of proving by a fair preponderance of the evidence that he is an American citizen. Lee Hon Lung v. Dulles, 261 F.2d 719, 720 (9th Cir. 1958); Lee Shew v. Brownell, 219 F.2d 301 (9th Cir. 1955). He established a *prima facie* case of citizenship by showing that he had been admitted to the country and issued a certificate of identity on June 6, 1932. By establishing this *prima facie* case he met his burden of proof. See *Lee Hon Lung, supra.*

■ The Service was entitled to rebut appellant's *prima facie* case by showing that the certificate had been obtained

by fraud or error. *Lee Hon Lung, supra.* The government's burden of proof in such a case is a heavy one. This court stated in *Lee Hon Lung, supra:*

> "[W]e hold that where one has, over a long period of years, acted in reliance upon a decision of a board of special inquiry admitting him as a citizen of the United States, the fraud or error which will warrant disregard of such a decision must be established by evidence which is clear, unequivocal, and convincing." 261 F.2d at 724.

See also Lew Moon Cheung v. Rogers, 272 F.2d 354, 362 (9th Cir. 1959). This burden of proof is "much more than a mere preponderance of the evidence." Delmore v. Brownell, 236 F.2d 598, 600 (3d Cir. 1956). The evidence must not leave the issue in doubt. See Chaunt v. United States, 364 U.S. 350, 353, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960); Baumgartner v. United States, 322 U.S. 665, 670, 64 S.Ct. 1240, 88 L.Ed. 1525 (1944); Schneiderman v. United States, 320 U.S. 118, 125, 158, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943).

Denial of a certificate of citizenship some thirty-six years after appellant was admitted into this country as a citizen is, like cancellation of a certificate of citizenship, in its consequences "more serious than a taking of one's property, or the imposition of a fine or other penalty." The government should not prevail "without the clearest sort of justification and proof." Schneiderman v. United States, *supra,* 320 U.S. at 122, 63 S.Ct. at 1335.

■ On appeal, this court must make an independent determination as to whether the evidence introduced by the Service was "clear, unequivocal, and convincing." *See* Chaunt v. United States, *supra,* 364 U.S. at 353, 81 S.Ct. 147, 5 L.Ed.2d 120; Knauer v. United States, 328 U.S. 654, 657, 66 S.Ct. 1304, 90 L.Ed. 1500 (1946); Stacher v. United States,

---

**3.** 8 U.S.C. § 1452 reads in pertinent part: "A person who claims to have derived United States citizenship through the naturalization of a parent * * * may apply to the Attorney General for a certificate of citizenship. * * * "

258 F.2d 112, 120 (9th Cir.), cert. denied, 358 U.S. 907, 79 S.Ct. 232, 3 L. Ed.2d 228 (1958).[4]

It is to be noted that the issue in 1932, when appellant, then fifteen years old, was admitted as a citizen by derivation, was whether appellant was in fact the son of Lim Jew. On this issue the Board of Review found that the relationship of father and son was established, the Board stating:

> "The applicant appears to have full knowledge regarding all members of his immediate family and his testimony is harmonious with that of his alleged father concerning them * *.
>
> * * * * * *
>
> "It is believed that the evidence reasonably establishes the applicant's claim to be a son of his alleged father. It is ordered that the appeal be sustained."

The government did not challenge the citizenship of appellant's father, Lim Jew, at any stage of the 1932 proceedings.

The district court below found that the appellant was not entitled to citizenship because his father, the same Lim Jew, was fraudulently admitted. The father, Lim Jew, was admitted as a citizen in 1908. He made two trips to China since, one in 1916 and one in 1926. The official immigration files with respect to the admission of Lim Jew in 1908 are a part of the record. At that time (February 1, 1908) Lim Jew testified in person under oath. His testimony was supported by that of his father, a native born Chinese, Lim Sam, and a second witness who was named Jew Sen, age 52, and testified in person. All were sworn. The present proceeding is thus a collateral attack on the February, 1908, proceeding. All of the witnesses to that proceeding had died long prior to this trial.

Upon a reading of the entire transcript, we determine that, although there was some evidence tending to show that appellant's family name was Jew rather than Lim, appellee did not meet its burden of proving fraud or error by clear, unequivocal and convincing evidence.

The government's first, and perhaps most damaging, evidence concerned one Wong Foo who had come to the United States in 1909, had worked with appellant's father, had served in the United States Armed Forces in World War I, and had known appellant since shortly after his entry into the country. In 1954 and again in 1958, Wong Foo testified to the Immigration and Naturalization Service that appellant's family name was Lim and not Jew. At that time, he identified himself, and appellant identified him at trial, as a long-time friend but not a relative. Wong Foo could not be located to testify at trial. The court admitted into evidence his sworn statement dated October 20, 1967, and taken after an interview with a Service attorney, a State Department agent, and an interpreter. The interview took place in the convalescent hospital in which Wong Foo was then a patient. In the statement, Wong Foo admitted that he had entered the United States in 1909 under the false or "paper" name of Wong Foo but that his real name was Jew Hoi Bo. He stated that he was the brother of appellant's father. This fact, if believed, would establish that appellant's family name was Jew. Oral statements made by Wong Foo during the interview and a subsequent interview in December, 1967, which substantiated these facts, were testified to by those present at one or both interviews: Sam I. Feldman, the Service's attorney; Dr. J. Hym Moy, the interpreter; and Hibbard Lamkin, the State Department Special Agent.

These written and oral statements constituted hearsay evidence as they were

---

4. The government acknowledges the evidentiary burden as herein stated and the authority of this court to re-examine the facts. Appellee's Brief p. 5. While the cases cited are denaturalization cases the effect of the proceeding here is even more severe since it may put in jeopardy the citizenship of others who have innocently claimed derivative citizenship from the same common ancestor.

extra-judicial statements offered to prove the truth of the matter contained therein. Papadakis v. United States, 208 F.2d 945, 952 (9th Cir. 1953). Such statements are generally inadmissible but may be admitted if they fall within any exception to the hearsay rule. Sica v. United States, 325 F.2d 831, 836 (9th Cir. 1963), cert. denied, 376 U.S. 952, 84 S.Ct. 970, 11 L.Ed.2d 972 (1964). The trial court admitted the statements on the ground that they met the declaration against penal interest exception to the hearsay rule in that, Wong Foo, by admitting that he entered the United States by fraud, may have rendered himself deportable and liable for possible criminal penalties.

The declarations directly controverted sworn statements he had made to the Service on two previous occasions in which he had confirmed the facts supporting appellant's citizenship. Wong Foo was seventy-two years of age and was ill at the time of the later statements. At the time of the first interview in which the contradictory statements were made, he had been a patient in a convalescent hospital for some eighteen months. He was described as nervous and "worrying about his wife and daughter" who were in Hong Kong. He was totally dependent upon the United States government for his financial support. He made the statements only after a twenty-five minute interrogation by the government agents. The likelihood that the statements were true because they were against his penal interest or came within any other alleged exception to the hearsay rule could well be more than outweighed by the possibilities that this elderly, infirm man who understood little English did not comprehend the questions, or that he decided to tell the agents what he thought they wanted to hear so that they might let him live out his life in the United States. In any event, Wong Foo was not present and there was no opportunity for cross-examination.

We think that other evidence introduced by the government, although admissible, was less significant and relevant than Wong Foo's questionable statements. One Eng Fook testified by means of written interrogatories that he was brought into the United States in 1908 by Lim Sam, appellant's claimed grandfather. He falsely claimed to be Lim Fook, the son of Lim Sam (whose real name was Eng Sam). This evidence tends to show that Lim Sam brought in one "paper" son, Lim Fook, but does not show that Lim Jew was also a "paper" son of Lim Sam.[5] The evidence, at best, infers that, since Lim Sam brought one man into the country illegally, he also brought in appellant's father, Lim Jew, illegally. Eng Fook admitted that he did not know appellant or appellant's father and had last seen appellant's claimed grandfather, Lim Sam, in 1908.[6]

The government introduced so-called "coaching papers" which appellant admitted he had sent to his relatives in Hong Kong to aid them in coming to the United States. These papers contained pictures and corresponding names of relatives for identification purposes. They also included answers to questions that the Immigration officials might ask. Appellant warned his relatives:

> "If you are asked to identify the pictures listed below during interviews at the consulate or the Immigration Service, you will answer accordingly. But you should definitely not carry them with you so as to avoid trouble— very important."

5. The recorded and sworn testimony of Lim Sam disputes this contention. He stated on February 6, 1908, that he had three sons: Lim Chew, or Lim Jew (appellant's father); Lim Fook; and Lim Hing. It was also disputed by the sworn testimony of Chow Sen (February 6, 1908) and of Lim Chew (February 1, 1908).

6. Said the court with respect to Lim Fook's testimony: "All I am saying is that it is very confusing, it is very confusing. It is not clear-cut at all." (R.T. 350).

We agree with appellee that the existence of these papers was damaging and "would seem to be persuasive evidence that appellant's claimed family structure is not bona fide", but appellant offered a plausible explanation. He described the period of at least six weeks which he spent at Angel Island, California, awaiting admission into the United States in 1932 as a fifteen year-old youth as "more worse than in prison". He hoped that his relatives, by studying the "coaching papers", would be able to supply correct answers in perfectly-worded English for the Immigration officials and thereby avoid the long and prison-like delay before entry into the United States. He said that he sent his wife similar papers which he thought speeded her entry into the country.

The majority of the remainder of the government's evidence was directed toward proving that appellant's name—and that of his ancestors—was Jew rather than Lim by showing that the village, Tung Sing, in which appellant admittedly was born and lived before coming to the United States consisted only of families named Jew, and that no one named Lim lived in the village. The government introduced testimony of at least seven witnesses who attested to this fact. The significance of their testimony, however, was severely diminished by cross-examination. At the time in question—approximately 1925 to 1932—all of them were children. They knew appellant only as a childhood schoolmate. Most of them had neither seen nor heard from appellant since he left the village for the United States in 1932 at the age of fifteen. They admitted that they referred to appellant only as Len Hang and did not call him by his full name, either Lim Len Hang or Jew Len Hang. Their suspicion that his surname was Jew was based largely on the fact that their elders had told them that all persons in the village had that surname. None of them had known appellant's grandfather.

Appellant, on rebuttal, produced several witnesses who testified that he had always been known to them as George Lim or Lim Len Hang. His four children had been baptized under the Lim family name. Agness Underwood, a former editor of the Los Angeles Herald Examiner, and Lily L. Chan, a court reporter, both testified that they were long-time friends of appellant. While on trips to Hong Kong in 1963 and 1961, respectively, they looked up appellant's mother, brother and sister-in-law. They found them by inquiring of neighbors as to the location of the residence of the Lim family. If the family name were Jew, it is questionable whether their Chinese neighbors would have known them as Lims.

■ In this case the appellant was granted a certificate of identity as a citizen by a Board of Special Inquiry in 1932 after a hearing. A proceeding before such a board is not a judicial proceeding and does not have the force and effect of a judgment. Lee Hon Lung v. Dulles, 261 F.2d 719, 723 (9th Cir. 1958). Nonetheless it does establish a *prima facie* case for the appellant. The hearing in appellant's case was neither informal nor summary. In the approximately thirty-six years thereafter, the government has taken affirmative steps of recognition of the status of appellant as a citizen. In 1947 it issued a passport to him to return to China and take a wife. In 1963 the government again issued a passport to him acknowledging his status as an American citizen. There was no evidence that he was an undesirable citizen for any moral or political reason, apart from the dispute here, with which he was not personally involved. Quite the contrary, the district court commented in its memorandum opinion:

"Several distinguished citizens of this community, who have know [sic] and have been friends of the plaintiff for many years, testified to the excellent reputation of plaintiff in the community for truth, honesty and

integrity. There is no question but that plaintiff has been an outstanding member of the Los Angeles community and has made substantial contributions to the development of this area and its institutions." 316 F.Supp. 515.

It is to be noted that the government is not attacking appellant's application for citizenship on the basis of any activity engaged in by applicant. Compare Nishikawa v. Dulles, 356 U.S. 129, 78 S.Ct. 612, 2 L.Ed.2d 659 (1958); Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943). Were this the case, the proof must have shown that the conduct or activity was knowing and voluntary. Such a standard could not be met on these facts. Here the claimed citizenship is derivative. The case of the appellant must stand or fall as the issues are joined here, not on the basis of what appellant has personally done but on the basis of the claimed fraud of his father who was admitted in 1908 as the son of Lim Sam, and that fraud, if it exists, depends in turn upon the claimed basic fraud of the grandfather, Lim Sam, who was admitted in 1899 as a native born. If appellant is denied derivative citizenship, how many more progeny of Lim Sam are likewise put in jeopardy? In Schneiderman the government sought to "turn the clock back" twelve years with the possibility of grievous consequences to one man, the applicant. In Lee Hon Lung, supra, the government sought to turn the clock back for thirty-four years. Here we are asked to look back to Lim Sam some seventy years to a time as to which memories are dim, facts are confused and the truth is in doubt.

At trial below, the government introduced no evidence, either direct or circumstantial, that tended to show that, if there was fraud or error, appellant voluntarily acquiesced in it or had knowledge of it. The evidence, in contrast, indicated that if there was fraud it was committed by appellant's father or claimed grandfather or both. Appellant was only fifteen years of age at the time he was brought into the United States by his father in 1932. He testified that he had never seen his grandfather and knew that his name was Lim Sam only from his father. This testimony was uncontroverted. When the trial judge asked him, "Did your father ever talk about your grandfather to you?", he responded, "No in Chinese [sic] children don't ask a father too many questions, you know." Later, he stated, "We don't talk too much in the family."

The trial judge recognized that the fraud or error was not of appellant's making. In his memorandum opinion, he wrote:

"It is unfortunate that the conduct of plaintiff's father so many years ago, when bringing his son [plaintiff] into the United States as a member of the Lim family and as the grandson of Lim Sam, should now cause plaintiff the problems here presented."

■ We believe that under the circumstances of this case the issue has not been resolved by the government. Where retrospective fraud is relied upon, as here, the facts and the law should be construed as far as is reasonably possible in favor of the citizen. See Schneiderman, supra, 320 U.S. at 122, 63 S.Ct. 1333.

With deference to the trial court we find it impossible to conclude that the identity and genealogy of appellant's father Lim Jew, which was established so clearly in 1908 by the immigration authorities in formal proceedings upon sworn testimony, and was reaffirmed so clearly in 1932, can in 1967 be said to have been disestablished on this record by "clear, unequivocal and convincing" evidence. The testimony relied upon to do this was primarily by witnesses who did not appear at the trial. They were Lim Fook and Wong Foo. Both were elderly and at least one in poor health. Neither testified at the trial. The testimony of both was contradictory. The statements of Wong Foo under oath either in 1908 or in 1967 were false as a matter of record. The statements of Lim Fook were completely confusing and

**204**

necessarily false either at the time he entered the United States or when he gave evidence in this proceeding.

 We hold that the 1932 decision of the Immigration and Naturalization Service that appellant was a derivative citizen of the United States was not rebutted by clear, unequivocal and convincing evidence of fraud or error. The judgment is reversed with directions to grant judgment for the appellant.