N.R. SMITH, Circuit Judge,
dissenting in part, with whom THOMAS, Chief Judge, and PREGERSON and FLETCHER, Circuit Judges, join in Part I, but concurring in Sections I — III and in the result of Section V and VI of the majority decision:
United States citizenship is “a right no less precious than life or liberty.” United States v. Dang, 488 F.3d 1135, 1138 (9th Cir.2007) (quoting Klapprott v. United States, 335 U.S. 601, 616, 69 S.Ct. 384, 93 L.Ed. 266 (1949) (Rutledge, J., concurring)). The Supreme Court has noted, “It is better that many ... immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country.” Fat v. White, 253 U.S. 454, 464, 40 S.Ct. 566, 64 L.Ed. 1010 (1920). Yet today, the majority diminishes a citizen’s ability to protect his citizenship, by allowing the government to prove that Petitioner is not a United States citizen by the traditional, less demanding, standard of proof used in general civil litigation. Thus, this 84-year-old- Petitioner (whom the government has previously recognized as a United States citizen) will be stripped of his claimed citizenship and deported, without forcing the government to meet its “heavy burden of proof’ to submit “clear, unequivocal, and convincing” evidence (“not leavfing] the issue in doubt”) that he is not a citizen. Dang, 488 F.3d at 1139 (quoting Fedorenko v. United States, 449 U.S. 490, 505, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981)).
This case does present a conflicting history of Petitioner’s life. However, amid all of the confusion, no one disputes that Petitioner (as Reynaldo Mondaca-Carlon (“Reynaldo”)) has presented himself to the government as a United States citizen, and the United States has treated Petitioner as a United States citizen. Thus, no one disputes that the government bore the burden to submit evidence that clearly, unequivocally, and convincingly (not leaving the issue in doubt) showed Petitioner was not Reynaldo.
Because I agree with Petitioner that the district court erroneously reached its decision, when it only required the government to present clear and convincing evidence regarding his citizenship, this case demands remand to the district court to *429 redetermine the issue using the correct burden of proof. Because remand is necessary, I would not address Petitioner’s remaining issues.[1]
Even though I do not agree with the majority’s holding on the burden of proof, I reluctantly concur in the judgment to deny the petition (Section VI). Applying the clearly erroneous standard of review to the district court’s findings of fact under Federal Rule of Civil Procedure 52(a) and using the majority’s “clear and convincing” burden of proof, I cannot grant the petition for review. There would also be no benefit to remanding this case to the district court, because the outcome would not change.
I. The burden of proof required for clear,. unequivocal, and convincing evidence is greater than the burden of proof required for clear and convincing evidence.
A. Federal courts have recognized a higher burden of proof for clear, unequivocal, and convincing evidence.
The Supreme Court has recognized three general standards of proof — preponderance of the evidence (the minimum standard), clear-and-convincing evidence (the intermediate standard), and beyond a reasonable doubt (the high standard). See Addington v. Texas, 441 U.S. 418, 423-24, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). However, the Supreme Court has never suggested that standards of proof are limited to these three general levels. To the contrary, the Supreme Court and other courts have expressly recognized variants to the intermediate standard of proof. See California ex rel. Cooper v. Mitchell Bros.’ Santa Ana Theater, 454 U.S. 90, 93, 102 S.Ct. 172, 70 L.Ed.2d 262 (1981) (per curiam) (“This Court has, on several occasions, held that the ‘clear and convincing’ standard or one of its variants is the appropriate standard of proof in a particular civil case.”). “In cases involving individual rights, whether criminal or civil, ‘the standard of proof at a minimum reflects the value society places on individual liberty.’ ” Addington, 441 U.S. at 425, 99 S.Ct. 1804 (alterations and citation omitted).
In both deportation and denaturalization proceedings, federal case law and regulations governing deportability require that the government establish by “clear, unequivocal, and convincing evidence” that the petitioner is removable. See Chaunt v. United States, 364 U.S. 350, 353, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960); Woodby v. INS, 385 U.S. 276, 285-86, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966); 8 C.F.R. § 1240.46(a). We have also applied this same clear, unequivocal, and convincing standard in cases where citizenship is at issue. See Lim v. Mitchell, 431 F.2d 197, 199 (9th Cir.1970); Lee Hon Lung v. Dulles, 261 F.2d 719, 724 (9th Cir.1958). This case requires us to determine whether the addition of the word “unequivocal” changes the government’s burden of proof to a standard above “clear and convincing evidence.”
In Addington, the Supreme Court settled this very issue. In Addington, the *430 Supreme Court was faced with the question of the appropriate standard of proof to apply in civil commitment proceedings.[2] 441 U.S. at 422, 99 S.Ct. 1804. In determining the appropriate standard of proof, the Supreme Court recognized that the addition of the word “unequivocal” created a burden “approximating, if not exceeding, that used in criminal cases,” which higher burden was required for cases with “unusually drastic ” consequences. Id. at 432, 99 S.Ct. 1804 (emphasis added).[3] The Supreme Court further recognized that a higher burden of proof in denaturalization cases was appropriate, because those issues “were basically factual and therefore susceptible of objective proof,” as opposed to civil commitment proceedings that are dependent on subjective proof. Id.
Similarly, in Kungys v. United States, the Supreme Court considered whether Kungys misrepresented or concealed facts to obtain citizenship. 485 U.S. 759, 765-66, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988) (plurality opinion by Scalia, J.). The Supreme Court remanded the matter to the Third Circuit, but cautioned the court to “bear[ ] in mind” that “clear, unequivocal, and convincing” standard required an “unusually high burden of proof.” Id. at 776, 108 S.Ct. 1537 (emphasis added). Justice Stevens, in his concurrence,[4] emphasized the “special burden on the Government,” which “in this kind of civil' proceeding is equivalent to that enforced in criminal cases.” Id. at 791-92, 108 S.Ct. 1537 (Stevens, J., concurring).
This higher burden of proof has also been recognized in other cases. See Klap-prott, 335 U.S. at 612, 69 S.Ct. 384 (Black, J., announcing judgment of the Court and delivering the opinion) (plurality opinion)[5] (noting that the clear, unequivocal, and convincing “burden is substantially identical with that required in criminal cases— proof beyond a reasonable doubt”); id. at 617, 69 S.Ct. 384 (Rutledge, J., concurring) (noting that the “burden of proof for de-naturalization ... approximates the burden demanded for conviction in criminal cases, namely, proof beyond a reasonable doubt”); Schneiderman v. United States, 320 U.S. 118, 122, 135, 63 S.Ct. 1333, 87 L.Ed. 1796 (1943) (holding citizenship “should not be taken away without the clearest sort of justification and proof,” and that proof cannot “leave the issue in *431 doubt”); see also United States v. Hor-witz, 140 F.Supp. 839, 840 (ED.Va.1956) (“Moreover, with so dire consequences in the balance, the proof must be made by ‘clear, unequivocal and convincing evidence which does not leave the issue in doubt,’ in effect, ‘proof beyond a reasonable doubt.’ ”).
Our sister circuits have also recognized this higher burden of proof when revocation of citizenship is at issue. For example, in United States v. Sprogis, the Second Circuit noted:
The government bears a heavy burden of proof in attempting to revoke an individual’s citizenship. Because citizenship is such a precious right, the government to succeed must prove its case by dear, unequivocal, and convincing evidence which does not leave the issue in doubt. In addition, “the facts and the law should be construed as far as is reasonably possible in favor of the citizen.”
763 F.2d 115, 121 (2d Cir.1985) (emphasis added) (citing Fedorenko, 449 U.S. at 505, 101 S.Ct. 737, and quoting Schneiderman, 320 U.S. at 122, 63 S.Ct. 1333).
The Sixth Circuit, relying on Addington, concluded that the word “unequivocal” raised the level of proof necessary above the intermediate standard of proof. See Ward v. Holder, 733 F.3d 601, 605-06 (6th Cir.2013). In Ward, the government sought to remove the petitioner, arguing that he had “abandoned his lawful-permanent-resident status.” Id. at 602. The Sixth Circuit concluded that the appropriate degree of proof required was “clear, unequivocal, and convincing evidence.” Id. The court then examined the level of proof that this standard required. Id. at 605. The Sixth Circuit, applying Addington, concluded that the word “ ‘unequivocal’ ma[de] a difference,” and therefore “[t]he ‘clear, unequivocal, and convincing standard’ is a more demanding degree of proof than the ‘clear and convincing’ standard.” Id.
The BIA has also recognized that the addition of the word “unequivocal” to the “clear and convincing” standard alters the burden of proof. See Matter of Patel, 19 I. & N. Dec. 774, 783 (BIA 1988). In addressing the standards of proof, the BIA recognized that “[t]he clear and convincing standard imposes a lower burden than the clear, unequivocal, and convincing standard applied in deportation and denatural-ization proceedings because it does not require that the evidence be unequivocal or of such a quality as to dispel all doubt.” Id.
Because consequences were “unusually drastic — loss of citizenship and expulsion from the United States,” the Supreme Court has explained that the higher burden was appropriate in citizenship cases. Addington, 441 U.S. at 432, 99 S.Ct. 1804. This unusually high burden of proof reflects the value that society places on one’s citizenship. See Trop v. Dulles, 356 U.S. 86, 93, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (plurality opinion) (noting that United States citizenship itself is a fundamental right).
This higher burden of proof is consistent with the Supreme Court’s discussions with regard to the value of United States citizenship. Removal of Petitioner implicates a loss of a serious liberty interest; a determination of this loss requires a heavy burden. See Kungys, 485 U.S. at 792, 108 S.Ct. 1537 (noting “[t]his Court has long recognized the plain fact that to deprive a person of his American citizenship is an extraordinarily severe penalty.... To deport one who so claims to be a citizen, obviously deprives him of liberty. It may result also in loss of both property and life; or of all that makes life worth living.” (internal alterations and quotation marks omitted) (quoting Klapprott, 335 U.S. at *432 611-12, 69 S.Ct. 384)); Fedorenko, 449 U.S. at 505-06, 101 S.Ct. 737 (“Any less exacting standard would be inconsistent with the importance of the right that is at stake in a denaturalization proceeding.”). Additionally, the Supreme Court has recognized that the loss of citizenship can have “severe and unsettling consequences.” Fedorenko, 449 U.S. at 505, 101 S.Ct. 737. The potential loss of citizenship, regardless of whether obtained through birth or naturalization, is significant. See Knauer v. United States, 328 U.S. 654, 658, 66 S.Ct. 1304, 90 L.Ed. 1500 (1946) (holding that citizenship obtained through birth or naturalization “carries with it all of the rights and prerogatives of citizenship obtained by birth in this country ‘save that of eligibility to the Presidency ”). Although “a deportation proceeding is not a criminal prosecution,” the Supreme Court “has not closed its eyes to the drastic deprivations that may follow when a resident of this country is compelled by our Government to forsake all the bonds formed here and go to a foreign land where he often has no contemporary identification.” Woodby, 385 U.S. at 285, 87 S.Ct. 483. “The immediate hardship of deportation is often greater than that inflicted by denaturalization,” because “many resident aliens have lived in this country longer and established stronger family, social, and economic ties here than some who have become naturalized citizens.” Id. at 286, 87 S.Ct. 483. Thus, the Supreme Court has required “the solidity of proof ... for a judgment entailing the consequences of deportation, particularly in the case of an old man who has lived in this country for [more than sixty] years.” Id. at 285, 87 S.Ct. 483.
B. Past imprecise language does not “overrule” clear precedent.
In this decision, the majority ignores this precedent, instead reading the word unequivocal out of the phrase, concluding that “clear and convincing” is the same standard as “clear, unequivocal, and convincing.” Thus, it determines that the word “unequivocal” is meaningless, because the phrases have been used “interchangeably” in the past.
Imprecise usage or improper citation is not a proper basis for concluding that words have no meaning, especially in light of the Supreme Court’s clear and unambiguous directive regarding the burden of proof. It is especially improper, because the majority does not cite (and I cannot find) any Supreme Court citizenship cases that suggest these standards are the same. Congress has 'not addressed the required standard of proof, and the Supreme Court has never overruled the precedent. Thus, the majority cites precedent where the Supreme Court and other courts have, in other contexts, used the standard interchangeably without regard to whether there is a different standard being applied. However, those mistakes in other contexts should not alter our application of this Supreme Court precedent.
The majority not only ignores the term “unequivocal,” it also ignores the dependent clause used by the Supreme Court in citizenship cases, which helps explain the term unequivocal. The Supreme Court has explained time and time again in the context of citizenship issues that “ ‘clear, unequivocal, and convincing’ evidence ... does not leave the issue in doubt.” See Schneiderman, 320 U.S. at 135, 63 S.Ct. 1333 (emphasis added); see also Baum-gartner v. United States, 322 U.S. 665, 670, 64 S.Ct. 1240, 88 L.Ed. 1525 (1944); Knauer, 328 U.S. at 657, 66 S.Ct. 1304; Klapprott, 335 U.S. at 612, 69 S.Ct. 384 (plurality opinion); Perez v. Brownell, 356 U.S. 44, 47 n. 2, 78 S.Ct. 568, 2 L.Ed.2d 603 (1958), overruled on separate grounds by Afroyim v. Rusk, 387 U.S. 253, 87 S.Ct. *433 1660, 18 L.Ed.2d 757 (1967); Nowak v. United States, 356 U.S. 660, 663, 78 S.Ct. 955, 2 L.Ed.2d 1048 (1958); Chaunt, 364 U.S. at 353, 81 S.Ct. 147; Costello v. United States, 365 U.S. 265, 269, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); Fedorenko, 449 U.S. at 505, 101 S.Ct. 737; Kungys, 485 U.S. at 781, 108 S.Ct. 1537. The clear and convincing standard (highly probable) is not equivalent to this language.
The majority’s conclusion could only suggest that, because the Supreme Court inartfully chose its words in several non-citizenship cases, citizenship cases deserve nothing better. However, Supreme Court precedent suggests it is much more likely that the Supreme Court selected its words carefully for a select type of cases, and this court is bound to follow its precedent until such time as the Supreme Court overrules itself. See Rodriguez de Quijas v. Shearson/Am. Exp., Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (“If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.”).
C. Comparing burdens of proof in immigration contexts further supports a conclusion that clear, unequivocal, and convincing evidence has a greater burden of proof than clear and convincing evidence.
To again justify its decision, the majority notes that its “task today is not to apply canons of statutory construction; the burden of proof in alienage-determination proceedings is entirely a judicial construct.” Maj. Op. 420. I agree that we are examining judicial precedent. However, when we determine the burden of proof, we must be mindful that “the standard of proof at a minimum reflects the value society places on individual liberty.” Addington, 441 U.S. at 425, 99 S.Ct. 1804 (alterations omitted) (quoting Tippett v. Maryland, 436 F.2d 1153, 1166 (4th Cir.1971)).
Let us examine how these phrases are used by Congress. Congress has mandated that, in removal proceedings under 8 U.S.C. § 1229a, an alien “be ordered removed in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable (as defined in subsection (e)(2) of this section).” § 1229a(b)(5)(A) (emphasis added); see also 8 C.F.R. § 1003.26. In contrast, Congress has also mandated (1) if an alien is an applicant for admission, the alien must establish that he or she is “clearly and beyond doubt entitled to be admitted and is not inadmissible under section 1182,” § 1229a(c)(2)(A) (emphasis added), or (2) if an alien is asserting that he or she is “lawfully present in the United States pursuant to a prior admission,” then the alien must establish this fact “by clear and convincing evidence,” § 1229a(c)(2)(B) (emphasis added).
Applying rules of statutory interpretation to § 1229a, “[i]t is our duty ‘to give effect, if possible, to every clause and word of a statute.’ ” United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (quoting Inhabitants of Montclair Tp. v. Ramsdell, 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883)). “[T]he use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words.” SEC v. McCarthy, 322 F.3d 650, 656 (9th Cir.2003). Thus, we cannot suggest that Congress intended each subsection of § 1229a to require the same intermediate burden of proof. If so, *434 we would ignore “the familiar canon of statutory construction,” which requires that “[a]bsent a clearly expressed legislative intention to the contrary, [the language of the statute itself] must ordinarily be regarded as conclusive.” Consumer Prod. Safety Comm’n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Further, because Congress used different standards of proof language in § 1229a, “[w]e would not presume to ascribe this difference to a simple mistake in draftsmanship.” Russello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). Therefore, Congress must have intended different standards of proof in the three contexts of immigration proceedings.
In interpreting § 1229a(b)(5)(A), Congress thus meant for aliens only to be removed in absentia after the government had met a higher burden of proof than the general “clear and convincing” intermediate standard. In establishing this burden, Congress “is presumed to be knowledgeable about existing law pertinent to any new legislation it enacts.” Native Vill. of Venetie I.R.A. Council v. Alaska, 944 F.2d 548, 554 (9th Cir.1991). Thus, the majority’s ruling today suggests that Congress enacted § 1229a(b)(5)(A), providing a higher societal value to an alien who did not get proper notice of a hearing (and with no claim to citizenship) than to this Petitioner’s claim that he was being robbed of his citizenship. The ruling cannot reflect the value society places on United States citizenship, as we must.
D. Conclusion
In deportation hearings, where a petitioner (who claims to be a United States citizen) will be deported and removed from the United States, the government must prove by clear, unequivocal, and convincing evidence that he or she is deportable. Again, quoting the Sixth Circuit and the BIA, this standard of proof requires a “more demanding degree of proof than the ‘clear and convincing’ standard.” Ward, 733 F.3d at 605; Matter of Patel, 19 I. & N. Dec. at 783 (“The clear and convincing standard imposes a lower burden than the clear, unequivocal, and convincing standard applied in deportation and denatural-ization proceedings because it does not require that the evidence be unequivocal or of such a quality as to dispel all doubt.”). Removal of Petitioner implicates the loss of a serious liberty interest; a determination of this loss requires a heavy burden, for which we must require the higher burden of proof. See Kungys, 485 U.S. at 791, 108 S.Ct. 1537 (Stevens, J., concurring) (noting “[t]his Court has long recognized the plain fact that to deprive a person of his American citizenship is an extraordinarily severe penalty.... To deport one who so claims to be a citizen, obviously deprives him of liberty. It may result also in loss of both property and life; or of all that makes life worth living.” (quoting Ng Fung Ho v. White, 259 U.S. 276, 284, 42 S.Ct. 492, 66 L.Ed. 938 (1922))).
II. Federal Rule of Civil Procedure 52(a) mandates the appropriate standard of review.
I agree with the majority that the proper appellate standard of review for district court nationality determinations is clear error. However, I reach that conclusion differently than my colleagues, because I believe Congress has spoken to the scope of judicial review in these cases.
Congress requires that this court review a district court’s final order in nationality claims as we would a district court’s decision in a declaratory judgment action. Federal Rule of Civil Procedure 52(a)(6) sets forth that review, requiring findings *435 of fact “not be set aside unless clearly erroneous.”
“In 1961, Congress enacted ... 8 U.S.C. § 1105a (1976 ed.), in order ‘to create a single, separate, statutory form of judicial review of administrative orders for the deportation of aliens from the United States.’ ” Agosto v. INS, 436 U.S. 748, 752, 98 S.Ct. 2081, 56 L.Ed.2d 677 (1978) (alteration omitted) (quoting H.R.Rep. No. 1086, at 22 (1961), as printed in 1961 U.S.C.C.A.N. 2950, 2966). In enacting § 1105a, “Congress carved out one class of cases, however, where de novo review in district court would be available: eases in which the person subject to deportation claims to be a United States citizen.” Id. at 753, 98 S.Ct. 2081. The Supreme Court noted that, “[i]n carving out this class of cases, Congress was aware of our past decisions [such as Ng Fung Ho, 259 U.S. 276, 42 S.Ct. 492], holding that the Constitution requires that there be some provision for de novo judicial determination of claims to American citizenship in deportation proceedings.”[6] Id.
In addition to carving out this class of cases, Congress also mandated the proper scope and standard of judicial review. See 8 U.S.C. § 1252(b). Congress provided for two types of review when nationality claims were at issue. 8 U.S.C. § 1252(b)(5). First, if a petitioner raised a nationality claim and presented no genuine issue of material fact, we may decide the issue of nationality subject to the administrative record and the administrative finding of fact. § 1252(b)(4),[7] (5)(A).[8] Second, if the petitioner raises issues of material fact, then we must remand the matter to the district court to conduct a hearing and decide the issue as if it were a declaratory judgment. § 1252(b)(5)(B).[9] Once the remand to the district court occurs, there is no basis for an appellate court to treat the case any differently than it would an appeal from a declaratory judgment.
Congress was clear then and is clear now — the district court is to conduct the de novo hearing and make a decision, just as if the action was brought as a declaratory judgment action under § 2201.[10] In declaratory judgment actions (such as this) *436 tried by the district court without a jury, the district court shall “find the facts specially” and review of those factual findings “must not be set aside unless clearly erroneous.” Fed.R.Civ.P. 52(a)(1), (6); see also Sessions, Inc. v. Morton, 491 F.2d 854, 858 (9th Cir.1974).
In enacting § 1252(b)(5), Congress took into consideration the Supreme Court’s mandate that a de novo review of citizenship claims must be undertaken prior to removal. In doing so, it specifically concluded that the district court was “better positioned than another to decide the issue in question.” Cf. Miller v. Fenton, 474 U.S. 104, 114, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). It specifically declined to have this court review issues of fact de novo. If Congress wanted this court to independently review the district court’s ultimate findings of fact, it could have easily provided for that review. It did not.
It is not relevant that the Supreme Court has not yet specifically addressed this court’s standard of appellate review under former § 1105a(a)(5) or § 1252(b)(5)(B), nor is it relevant that the Supreme Court has not overruled Baum-gartner and its progeny. Congress has provided the scope and standard of review as to this class of cases. This court is bound to follow Congress’s mandate.
With the exception of Lim, 431 F.2d 197, no other case in the Ninth Circuit has addressed this specific issue. In light of the statutory enactment of § 1105a, Lim was wrongly decided. It relied on Knauer and Baumgartner without considering whether the new statutory framework precluded continued reliance on that standard of review.
Lastly, even if there were any question with regard to the appropriate standard of review, the Supreme Court cleared any remaining doubt, in Pullman-Standard v. Swint, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); and Teva Pharmaceuticals USA Inc. v. Sandoz, Inc., — U.S. —, 135 S.Ct. 831, — L.Ed.2d - (2015). In Teva, the Supreme Court noted that Rule 52(a)(6) “does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court’s findings unless clearly erroneous.” Id. at 837 (quoting Pullman-Standard, 456 U.S. at 287, 102 S.Ct. 1781). “Rule 52(a) applies to findings of fact, including those described as ‘ultimate facts’ because they may determine the outcome of litigation.” Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 501, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984). The district court’s finding that it was highly probable that Petitioner was Mondaca Vega is an “ultimate fact,” which determines the outcome of this litigation. This determination is purely fact based, and made after considering the evidence of Petitioner’s identity submitted to the district court. Thus, because the majority did not find an error of law here, we must give deference to the district court’s determination that Petitioner is Mondaca Vega unless such determination is clearly erroneous.

. In this appeal, Petitioner makes four challenges. First, Petitioner argues that the district court erred in its application of the standard of proof, applying a lower burden of proof than that required by "clear, unequivocal, and convincing.” Second, Petitioner argues that the district court erred in finding that the government presented clear, unequivocal, and convincing evidence that Petitioner’s identity and United States citizenship was procured by fraud or error. Third, Petitioner argues that the district court's factual findings were based on assumptions, speculation, and conjecture. Fourth, Petitioner asserts that we must review de novo the district court's findings of fact, which assertion the government opposes.

. The Supreme Court noted that states varied the standard between "clear and convincing,” "clear, cogent, and convincing,” and "clear, unequivocal and convincing.” Addington, 441 U.S. at 431-32, 99 S.Ct. 1804.

. The Supreme Court further noted that "the term 'unequivocal' is not constitutionally required, although the states are free to use that [higher] standard.” Addington, 441 U.S. at 432, 99 S.Ct. 1804.

. Justice Stevens concurred in the opinion, because he believed that the majority’s "new burden-shifting presumption ... lowers the standard of proof required for the Government to prevail in a denaturalization proceeding.” Kungys, 485 U.S. at 792, 108 S.Ct. 1537 (Stevens, J., concurring).

. Justice Douglas joined the opinion. Justice Rutledge and Murphy concurred in the result, concluding that a higher burden of proof exists. Justice Burton joined the “judgment of the Court as limited to the special facts of this case and without expressing an opinion upon any issues not now before this Court.” Klap-prott, 335 U.S. at 616, 69 S.Ct. 384. Justice Burton noted that he agreed that a judgment of denaturalization could be entered by default, but determined that in this case the petitioner should be granted a hearing on the merits. Justice Burton did not suggest that a higher burden of proof should not be applied in a merits hearing. However, because the judgment was modified in a subsequent order on a more narrow ground, I do not suggest that the majority agreed on a common reasoning regarding the burden of proof. See Marks v. United States, 430 U.S. 188, 193-94, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977).

. Prior to this enactment, the Supreme Court has provided a standard of review in denatu-ralization cases, which required courts to undertake an independent review of the record. See, e.g., Baumgartner, 322 U.S. at 670, 64 S.Ct. 1240; Fedorenko, 449 U.S. at 506, 101 S.Ct. 737. However, none of the Supreme Court cases (setting forth this standard of review) were brought under former § 1105a(a)(5) or the present § 1252(b)(5)(B).

. Section 1252(b)(4) provides: "Except as provided in paragraph (5)(B)-(A) the court of appeals shall decide the petition only on the administrative record on which the order of removal is based, (B) the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary....”

. Section 1252(b)(5)(A) allows for the court to determine the nationality claim, "[i]f the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner’s nationality is presented, the court shall decide the nationality claim.” 8 U.S.C. § 1252(b)(5)(A).

. Section 1252(b)(5)(B) requires us to transfer the nationality claim "[i]f the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28 [Declaratory Judgment Action.].” (emphasis added).

. Section 2201 provides that “any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such *436 declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.’’ (emphasis added).